**HIGHLY CONFIDENTIAL – ATTORNEYS EYES' ONLY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CG3 MEDIA, LLC and COREY
GRIFFIN,

    Plaintiffs,

    v.

BELLEAU TECHNOLOGIES, LLC,

    Defendant.

Civil Action No. 1:21-cv-04607-MKV

**REDACTED COPY**

**PLAINTIFFS CG3 MEDIA, LLC AND COREY GRIFFIN'S RESPONSE TO BELLEAU
TECHNOLOGIES, LLC'S MOTION FOR A PRELIMINARY INJUNCTION**

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES' ONLY**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Belleau Fails to Establish that it is Likely to Succeed on the Merits. . . . . . . . . . . . . . . 6

        A.      Plaintiffs do not Infringe any Asserted Claims of the '646 Patent. . . . . . . . . . . . .7

                1.      Under Plaintiffs' Proposed Construction of the Claims, Belleau's
                        Infringement Claims Fail as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . .7

                2.      Belleau's Reliance on the '646 Patent's Specification and the Doctrine of
                        Equivalents to Broaden the Scope of its Invention is Misplaced. . . . . . . . . 9

        B.      The Asserted Claims of the '646 Patent are Invalid and Unpatentable. . . . . . . . .10

                1.      Belleau Cannot Meet its Burden of Showing that Plaintiffs' Anticipation
                        and Obviousness Defenses Lack Substantial Merit. . . . . . . . . . . . . . . . . .11

                2.      Belleau has not Met its Burden with Respect to Patentability. . . . . . . . . . .14

                        a.   The Asserted Claims are Directed Towards an Abstract Idea. . . . . . . .14

                        b.   Belleau has not Identified any Inventive Concept. . . . . . . . . . . . . . . .17

II.     Belleau Fails to Allege Irreparable Harm, Instead Speculating About Financial Harm that
        Could Easily be Measured and for Which a Monetary Award is Adequate. . . . . . . . . . . 18

        A.      Belleau's Delay in Bringing an Infringement Action and Delay in Bringing this
                Motion Are Compelling Evidence of a Lack of Irreparable Harm. . . . . . . . . . . . 19

        B.      Belleau Offers Insufficient Evidence and Self-Serving Conclusions Which Fail to
                Substantiate Belleau's Claims of Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . .20

        C.      Belleau has not Established the Requisite Causal Nexus Between Plaintiffs'
                Conduct and the Alleged Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

III.    Both the Balance of Hardships and the Public Interest Weigh Against Granting Belleau's
        Delayed Request for Broad Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES' ONLY**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Amazon.com v. Barnesandnoble.com*, 239 F.3d 1343 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . .4

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . .19, 23

*Apple, Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352 (Fed. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . .23

*Apple, Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . .23

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). . 17

*BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391 (Fed. Cir. 2022). . . . . . . . . . . . . . . . . . . . . . .10

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . .20

*Creative Internet Advert. Corp. v. Yahoo!, Inc.*, 476 F. App'x 724 (Fed. Cir. 2011). . . . . . . . . . .8

*Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020). . . . . . . . . .14, 15

*cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367 (Fed. Cir. 2021). . . . . . . . . . . . . . . . . . .17

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013). . . . . . . . . . . . . .18

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020). . . . .15

*Elec. Power Group v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . .16

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . .16

*Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Enzo Biochem, Inc. v. Amersham PLC*, 902 F. Supp. 2d 308 (S.D.N.Y. 2012). . . . . . . . . . . . . . .9

*Ferring B.V. v. Watson Labs., Inc.–Florida*, 764 F.3d 1401 (Fed. Cir. 2014). . . . . . . . . . . . . . . .7

*Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . .13

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . 9

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
   No. 20-cv-10195 (CM), 2021 WL 3604790 (S.D.N.Y. Aug. 12, 2021). . . . . . . . . . . . . . .6

*Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . .6, 10

*Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*,
   1:21-cv-00038-MKV, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021). . . . . . . . . . . . .5, 18, 19

*Ideavillage Products Corp. v. A1559749699-1*, Slip Copy (2020). . . . . . . . . . . . . . . . . . . . . . . .20

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022). . . . . . . . . . . . . .16

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . 18

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES' ONLY**

*Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358 (Fed. Cir. 2022). . . . . . . . . . . . . . . 7

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021). . . . . . . . . . . . . . . . . . .17

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . 19

*Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 15 F. Supp. 3d 307 (S.D.N.Y. 2014). . . . . . . . . .8

*RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . .16

*Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d 1363 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . .10

*Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . 10

*Spin Master, Ltd. v. E. Mishan & Sons, Inc.*,
    No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991 (S.D.N.Y. Dec. 6, 2019). . . . .19, 24

*TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278 (Fed. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*TEK Global, S.R.L. v. Sealant Systems Int'l, Inc.*, 920 F.3d 777 (Fed. Cir. 2019). . . . . . . . . . . . 24

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . 9

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009). . . . . . . . . . . . . . . .6

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136 (Fed. Cir. 2021). . . . . . . . . .8

*Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159 (Fed. Cir. 2014). . . . . . . . . . . . . . . . . . . . . .4

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363 (Fed. Cir. 2019). . . . . . . . . . .17

*Veeco Instruments Inc. v. SGL Carbon, LLC*,

    No. 17-CV-2217 (PKC), 2017 U.S. Dist. LEXIS 181935 (E.D.N.Y. Nov. 2, 2017). . . . . 20

*W. View Rsch., LLC v. Audi AG*, 685 F. App'x 923 (Fed. Cir. 2017). . . . . . . . . . . . . . . . 15, 17, 18

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**Statutes**

35 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

35 U.S.C. § 102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

35 U.S.C. § 103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

Plaintiffs CG3 Media, LLC ("CG3 Media") and Corey Griffin ("Griffin") (collectively, "Plaintiffs") respectfully submit this Response in Opposition to Defendant Belleau Technologies, LLC's ("Belleau") Motion for a Preliminary Injunction ("Motion").

## PRELIMINARY STATEMENT

Belleau has inexcusably delayed bringing its Motion for almost eighteen months, and the Court should deny Belleau's Motion on this independent basis alone.  Contrary to Belleau's representations, there has been no change during the pendency of this litigation that necessitates the drastic relief Belleau requests.  Belleau's attempts to justify its delay—namely, that Belleau has experienced accelerating economic harm and needed Plaintiffs' source code to prove the elements of the preliminary injunction test—are undercut by the evidence before this Court.

Nevertheless, Belleau cannot meet the elements of the preliminary injunction test.  Belleau has not shown that it is likely to prove that the '646 Patent is both valid and infringed.  Likewise, Belleau has not shown that it has suffered or is likely to suffer irreparable harm caused by Plaintiffs' conduct.  And both the the balance of hardships and the public interest weigh against granting the broad injunctive relief that Belleau requests, which would effectively force CG3 Media to shut down its legitimate business.  As such, the Court should deny Belleau's Motion.

## STATEMENT OF FACTS

In March 2019, attorney Jeremy Sadkin ("Sadkin"), Belleau's manager and counsel, reached out to Griffin regarding Plaintiffs' web-based teleprompter "teleprompt.me."  Sadkin Decl. Ex. L (Dkt. No. 40-12); Sadkin Decl. (Dkt. No. 40) ¶ 1.  In his email, Sadkin expressed an interest in finding "ways to collaborate" and scheduling "a quick chat . . . to explore potential opportunities."  Sadkin Decl. Ex. L (Dkt. No. 40-12).  Notably, Sadkin's email made no reference to Belleau's U.S. Patent No. 9,953,646 ("the '646 Patent"), *see id.*, despite Belleau's emphasis on

1

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

its patented technology in other contexts, Sadkin Decl. (Dkt. No. 40) ¶ 11.  Griffin responded the following day, and within a week, Griffin, Sadkin, and Belleau's then-CEO had a phone call via Zoom.  Sadkin Decl. Ex. L (Dkt. No. 40-12).  ████████████████████████████████████

████████████████████████████████████████

Two years later, on April 5, 2021, Sadkin again contacted Griffin and congratulated Griffin on the launch of his online teleprompter application "Speakflow," the successor to teleprompt.me. Sadkin Decl. Ex. L (Dkt. No. 40-12); Griffin Dep. (**Pls.' Ex. B**) 73:13–17.  Sadkin also acknowledged the recent birth of Griffin's second child.  Sadkin Decl. Ex. L (Dkt. No. 40-12). Again, Sadkin made no reference to the '646 Patent, instead representing that he "would like to strike up another conversation with [Griffin]."  *Id.*  When Griffin did not respond immediately, Sadkin sent a follow-up email the next day.  *Id.*

On April 7, 2021, Griffin responded to Sadkin, stating that he was "super swamped . . . between some family issues, [his] baby, and a new job," and suggesting that they "reconnect in the future."  *Id.*  Sadkin responded just minutes later and again, without any specifics, insisted that "[t]here are some opportunities . . . worth discussing sooner rather than later."  *Id.*  On April 24, 2021, Sadkin again emailed Griffin, asking for "10 minutes of [Griffin's] time" and stating that it was "important."  *Id.*  Sadkin never mentioned the '646 Patent.  *Id.*  Three days later, on April 27, 2021, Griffin responded as follows: "Hey, I really appreciate you thinking of me for opportunities but I'm not looking to make any changes at the moment. I wish you the best!"  *Id.*

Minutes later, Sadkin responded, now accusing Plaintiffs' of infringing the '646 patent and threatening legal action.  Sadkin Decl. Ex. N (Dkt. No. 40-14).  In a cease-and-desist letter attached to Sadkin's email, Sadkin indicated that Belleau would "seek legal and equitable remedies" if Griffin failed to respond by May 14, 2021 and "shut[] down the speakflow.com website."  Sadkin

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

Decl. Ex. M (Dkt. No. 40-13).  On May 14, 2021, Griffin responded, confirming that he had received and reviewed the cease-and-desist letter and needed additional time to discuss Belleau's allegations with a lawyer.  Sadkin Decl. Ex. N (Dkt. No. 40-14).

A week later, on May 21, 2021, Plaintiffs' filed this lawsuit, seeking a declaratory judgment that Plaintiffs' Speakflow application does not infringe the '646 Patent and that the '646 Patent is invalid and unenforceable.  Dkt. No. 1.  That day, Plaintiffs' counsel notified Belleau of this lawsuit and provided a letter refuting Belleau's accusations.  Sadkin Decl. Ex. O (Dkt. No. 40-15).  On July 13, 2021, Belleau answered and filed a counterclaim alleging infringement.  Dkt. No. 9.  Plaintiffs answered on August 3, 2021.  Dkt. No. 11.

On August 5, 2021, Belleau served requests for production and interrogatories on Plaintiffs, and on September 13, 2021, the Court issued a protective order governing the handling of confidential information.  Dkt. No. 14; Dkt. No. 17.  On September 20, 2021, Belleau requested to inspect the Speakflow source code and followed up on its initial email a week later.  **Pls.' Ex. C**.  After checking with Plaintiffs, Plaintiffs' counsel offered the source code for inspection at their administrative office in East Aurora, New York, where counsel maintains its client files, on either October 19 or 21, 2021.  *Id.*  Belleau rejected this offer, arguing that the protective order required that the source code be made available only at the office address listed on Plaintiffs' counsel's letterhead and only on a date fourteen days following notice.  *Id.  But see* Dkt. No. 17.  To save cost and time,  Plaintiffs' counsel conferred with Plaintiffs and offered to transmit the Speakflow source code in PDF format to Belleau via express mail.  *Id.*  Belleau indicated that it was willing to accept the source code but "d[id] not waive the right to seek inspection of the code in its native format."  *Id.*  Plaintiffs produced the source code on October 14, 2021.  *Id.*

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

On November 18, 2021, despite already possessing the Speakflow source code in PDF format, Belleau submitted a letter to the Court requesting that Plaintiffs produce the source code in native format. Dkt. No. 19. On February 8, 2022, the parties met and conferred, and Plaintiffs "represented that [they] would, to the extent that it has not been produced, produce all source code" and "supplement their production accordingly." **Pls.' Ex. D**. On February 22, 2022, the Court ordered that Plaintiffs produce the Speakflow source code in native format for inspection at Plaintiffs' counsel's office by March 22, 2022. Dkt. No. 25. Again, going above and beyond the requirements of the Court's order and the protective order, Plaintiffs emailed Belleau all source code in native format, as well as all additional third-party code, on February 28, 2022, instead of requiring Belleau to send its expert to Plaintiffs' counsel's office. **Pls.' Ex. E**.

On November 15, 2022, forty-four months after Sadkin first contacted Griffin about teleprompt.me, nineteen months after Sadkin congratulated Griffin on the launch of Speakflow, eighteen months after Belleau's first threat of legal action, and **seventeen months, twenty-five days after this lawsuit began**, Belleau—"in urgent need of Court intervention"—moved for a preliminary injunction. Dkt. No. 34; Def.'s Mem. (Dkt. No. 38) 1.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2009). "[A] movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm." *Amazon.com v. Barnesandnoble.com*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citation omitted). Federal circuit law applies to the preliminary injunction analysis in patent cases. *See Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014).

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

<u>**ARGUMENT**</u>

The Court should deny Belleau's motion in light of Belleau's inexcusable eighteen-month delay. An inexcusable delay "may, standing alone, preclude the granting of preliminary injunctive relief[] because the failure to act sooner undercuts the sense of urgency upon which the availability for the remedy is predicated." *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, 1:21-cv-00038-MKV, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021). And although "[t]here is no bright-line rule for how much delay is too much, . . . courts in th[e Second] Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Id.*

Here, Belleau delayed bringing this motion for eighteen months, and its two justifications for this delay are without merit. First, Belleau argues that it has suffered "accelerating and increasing economic harm" during the pendency of this litigation. Def.'s Mem. (Dkt. No. 38) 23.

Second, Belleau states that it delayed bringing this motion because "it was necessary to obtain confidential source code evidence from Plaintiffs." Def.'s Mem. (Dkt. No. 38) 1. But Belleau fails to explain why this source code evidence was necessary to prove the elements of the

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

preliminary injunction test and the underlying infringement claims, which do not require any particular source code.  Regardless, Belleau was in possession of the Speakflow source code in PDF format beginning in October 2021—thirteen months before Belleau filed this motion.  Pls.' Ex. C.  And Plaintiffs produced the same Speakflow source code in native format, as well as all additional third-party code, on February 28, 2022—eight months before Belleau filed this motion.  Pls.' Ex. E.  Belleau's inexcusable delay, whether measured from the date Plaintiffs' filed this lawsuit or the date Belleau came into possession of the Speakflow source code, demonstrates a lack of urgency and an absence of irreparable harm.  As such, the Court should deny Belleau's motion.

Aside from this inexcusable delay, Belleau cannot show that it is entitled to a preliminary injunction, and the evidence put forth by Belleau does not support that such a drastic, extraordinary remedy is warranted.  For the reasons set forth below, Belleau cannot demonstrate a likelihood of success on the merits and irreparable harm.

## I.     Belleau Fails to Establish that it is Likely to Succeed on the Merits.

In a patent-infringement case, the party seeking a preliminary injunction "must show that it will likely prove infringement, and that it will likely withstand challenges...to the validity of the patent."  *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).  "In other words, if [an accused infringer] raises a 'substantial question' concerning **validity, enforceability, *or* infringement** (*i.e.*, asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue."  *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997) (emphasis added); *GeigTech E. Bay LLC v. Lutron Elecs. Co.,* 2021 WL 3604790, at *6 (S.D.N.Y. Aug. 12, 2021).

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

### A.    Plaintiffs do not Infringe any Asserted Claims of the '646 Patent.

#### 1.    Under Plaintiffs' Proposed Construction of the Claims, Belleau's Infringement Claims Fail as a Matter of Law.

Plaintiffs initiated this lawsuit as a declaratory judgment action to stop Belleau's interference with Plaintiffs' business through threats involving an invalid and uninfringed patent. Belleau's assertion that it is likely to succeed on the merits fails on its face.  Claim construction has not yet been determined by the Court.  Thus, at this point in the case, the scope of Belleau's property right granted by the USPTO is uncertain, and whether Plaintiffs' accused system falls within Belleau's property cannot be ascertained.  *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996) ("the construction of a patent ... is exclusively within the province of the court"); *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1363 (Fed. Cir. 2022) ("When the meaning or scope of a patent claim is disputed by litigants, the judicial role is to construe the claim as a matter of law.  For this reason alone, Belleau cannot establish that it is likely to succeed.

Further, not only have Plaintiffs' raised a substantial question as to the issue of noninfringement in this case, all of Belleau's patent infringement claims[2] against Plaintiffs will fail as a matter of law if the Court accepts Plaintiffs' position with respect to the various functions implemented by "a processor" and "said processor," as set out in Plaintiffs' claim construction briefing.  Dkt. No. 27.  In their responsive claim construction brief, Plaintiffs asserted that the definite article "said" in the asserted patent claims tethers the claimed functions ("storing, via **said**

---

[2] Belleau asserts one independent claim (claim 1).  All dependent claims asserted by Belleau in this case ultimately depend from claim 1, and if claim 1 is not infringed, none of the asserted dependent claims are infringed.  *Ferring B.V. v. Watson Labs., Inc.–Florida*, 764 F.3d 1401, 1411 (Fed. Cir. 2014) ("One who does not infringe an independent claim cannot infringe a claim dependent [on] (and thus containing all the limitations of) that claim").

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

processor"; "retrieving, via **said processor**"; "generating, via **said processor**"; "comparing, via **said processor**"; "altering, via **said processor**") to the initial antecedent phrase "a processor" through the use of the term "said processor" and as a result, there must be at least one processor (i.e. the antecedent "a processor") that performs all of these functions.  Plaintiffs supported their position with precedent from the Federal Circuit and this Court.  Dkt. No. 27 at 5–6; *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) (explaining that "[s]ubsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim"); *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1143 (Fed. Cir. 2021) (". . . it would defy the concept of antecedent basis—for the claims to recite "the computer" or "said first computer" being "further" programmed to do a second set of tasks if a different computer were to do those tasks instead"); *Creative Internet Advert. Corp. v. Yahoo!, Inc.*, 476 F. App'x 724, 728 (Fed. Cir. 2011) (holding that though "'an end user communication message,' is broad enough to cover multiple messages, each use of the phrase "said end user communication message" still refers to the antecedent phrase" and **a construction to the contrary would "render the word 'said' a nullity"**); *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 15 F. Supp. 3d 307, 332–33 (S.D.N.Y. 2014) (explaining that "each use of the phrase 'the data transfer line' still refers to the antecedent phrase" and construing the phrase at issue to require information be transmitted "over the same wire or wires" disclosed in the first instance).

Here, Belleau does not dispute that the functions of Plaintiffs' Speakflow application are implemented across various processors, including remote processors.  For instance, Belleau concedes that with respect to ███████████████████████████████████████████████ ███████████████████████████████████████████ which indisputably implicates different processors than, for example, a processor that alters the display on the display screen of

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

a computer (limitation 1(i)).  *See* Def.'s Mem. (Dkt. No. 38) 10–11.  Additionally, in many instances, Belleau does not identify which processor purportedly practices each limitation.  As Belleau would lose all of its claims under the proper construction of the processor limitations, Belleau has not shown that Belleau's noninfringement position lacks substantial merit.

### 2. Belleau's Reliance on the '646 Patent's Specification and the Doctrine of Equivalents to Broaden the Scope of its Invention is Misplaced.

Belleau's cannot rely on the '646 Patent's specification or the doctrine of equivalents to get around the narrow scope of the asserted claims.  With respect to the specification's reference to multiple processors, it is a bedrock principle of patent law that the claims of a patent define the scope of the invention.  *See, e.g.*, *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim").  In drafting its claims, Belleau elected to claim the narrower "via *said* processor" rather than reciting a broader "via *a* processor" in each of the clauses (c), (f), (g), (i), (j), (k), and (l).  Belleau cannot now depend on the specification to broaden the scope of its invention.

Similarly, Belleau's reliance on the doctrine of equivalents is misplaced.  The doctrine of equivalence cannot be applied to circumvent a claim limitation or incorporate subject matter that is discussed but not claimed.  *See, e.g.*, *Enzo Biochem, Inc. v. Amersham PLC*, 902 F. Supp. 2d 308, 317 (S.D.N.Y. 2012) (finding that the patent owner could not use the doctrine of equivalents to expand the claims to incorporate material discussed in the specification but not claimed); *Freedman Seating Co. v. Am. Seating Co.,* 420 F.3d 1350, 1362 (Fed. Cir. 2005) (reversing grant and remanding for grant of summary judgment of non-infringement because the patentee "chose to specifically limit the claims" to a particular physical embodiment and "[m]embers of the public were therefore justified in relying on this specific language in assessing the bounds of the claim");

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

*Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1424–25 (Fed. Cir. 1997) (affirming grant of summary judgment of no infringement under the doctrine of equivalents because the patent claimed a slot at the top of the container and the accused product placed a slot inside the container). If claim 1 is construed as requiring at least one processor to implement clauses 1(c), 1(f),1 (g), 1(i), 1(j), 1(k), and 1(l), the doctrine of equivalents cannot be applied to negate this requirement.

For the foregoing reasons and additional arguments that will be presented at the time of expert disclosures after the claim terms are construed by the Court, Belleau has not met its burden of establishing it is likely to succeed on the merits.

## B.     The Asserted Claims of the '646 Patent are Invalid and Unpatentable.

Similar to the issue of infringement, Belleau has not met its burden of showing it is likely to succeed on the issues of validity and patentability.  The burden is always on the movant to show that it is likely to succeed on the merits and "[a] patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity."  *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1398–99 (Fed. Cir. 2022). Preliminary injunction should not issue if the accused infringer presents a substantial question of validity or patentability.  *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007); *Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d 1363, 1375–76 (Fed. Cir. 2018).  To defeat a preliminary injunction, the accused infringer need not prove invalidity by clear and convincing evidence, as it must to succeed at trial.  *BlephEx,*, 24 F.4th at 1398–99.  Rather, the accused infringer need only "assert[ ] a defense that [the patent owner] cannot show 'lacks substantial merit.'"  *See id.*; *Genentech*, 108 F.3d at 1364.  "The ultimate burden is on [the patent owner] to show that it is likely to succeed on the merits to obtain the extraordinary remedy of a preliminary injunction, including on the validity issue."  *BlephEx,*, 24 F.4th at 1399.

10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

      1.      **Belleau Cannot Meet its Burden of Showing that Plaintiffs' Anticipation and Obviousness Defenses Lack Substantial Merit.**

In their invalidity defenses served on Belleau over a year ago[3], Plaintiffs identified fourteen prior art references that, alone or in combination pursuant to 35 U.S.C. §§ 102 or 103, render the '646 patent claims invalid. In its motion for preliminary injunction, Belleau offers conclusory opinions with respect to these references and fails to demonstrate that Plaintiffs' anticipation and obviousness defenses lack substantial merit. While Plaintiffs' technical expert will provide a detailed report on how the references identified by Plaintiffs render the asserted claims of the '646 Patent invalid during expert discovery and after the Court construes the claim terms at issue in this case, Plaintiffs provide below an exemplary chart that identifies prior art disclosures on a claim element by claim element basis.[4]

| CLAIM | EXEMPLARY DISCLOSURES |
|---|---|
| 1. **A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising** | Disclosed by US 6,212,498 B1 (**Pls.' Ex. G**) *See, e.g.*, Claim 1; Fig 4A; Fig 4B; Col. 6, lines 30-50.; Fig 13; Fig 14; Col. 16, lines 6-24. |

---

[3] Belleau makes several statements suggesting that Plaintiffs were required to come forward with "evidence of validity" or identify certain combinations of prior art at this stage of the case. *See* Def.'s Mem. (Dkt. No. 38) 15, 16 ("Plaintiffs have failed to come forward with sufficient evidence to raise a substantial question"; "Plaintiffs have put forward no specific combinations of prior art..."). Plaintiffs' invalidity contentions fully complied with Local Patent Rule 7 ("Invalidity Contentions must identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity... or unenforceability of any of the asserted claims."). Indeed, Belleau previously requested that the Court compel Plaintiffs to provide premature invalidity and noninfringement contentions (Dkt. No. 29 at 1–2) and this Court denied Belleau's requests as premature because "no depositions have yet to occur nor has there been any expert discovery." (Dkt. No. 32 at 4–5). Belleau's preliminary injunction is yet another attempt to force Plaintiffs to prematurely commit to noninfringement and validity positions before substantial discovery or expert reports.

[4] Attached as **Pls.' Ex. F** is a chart that includes all relevant language from the cited prior art.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

| | |
|---|---|
| 1a. **receiving a text artifact, said text artifact containing a plurality of artifact words;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Fig 2; Col. 4, Lines 28 – 57; Fig 4A; Col. 6, Lines 30 – 50. |
| 1b. **storing, via a processor, said text artifact in a memory device of a computer;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Fig 1; Col. 3, Lines 43 – 50; Col. 6, Lines 6 – 19. |
| 1c. **retrieving, via said processor, said text artifact;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Fig 2; Col. 4, Lines 28 – 57; Fig 12; Col. 14, Lines 11 – 18. |
| 1d. **displaying said text artifact on the display screen of said computer;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Fig 13; Fig 14; Col. 16, Lines 13 – 24. |
| 1e. **receiving a vocal input;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Claim 20. |
| 1f. **generating, via said processor, . . . a plurality of hypothesis words;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Claim 20; Col. 13, Lines 50 – 58. |
| 1g. **comparing, via said processor, . . . of said artifact words;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Claim 20; Fig 2; Col. 4, Lines 28 – 57; Col. 4, Lines 50 – 58; Col. 13 - 14, Lines 66 – 10. |
| 1h. **determining a match location . . . of said predetermined number of artifact words;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Col. 2, Lines 21 – 27; Col. 14, Lines 33 – 42; Fig 13; Fig 14; Fig 15; Col. 16, Lines 13 – 51. |
| 1i. **altering, via said processor, . . . of said computer;** | Disclosed by US 6,212,498 B1<br>*See, e.g.*, Claim 15; Claim 18; Claim 20; Col. 21, Lines 21 – 31. |
| 1j. **determining, via said processor, the font size of the text of said text artifact as displayed on said display screen;** | Disclosed by US 7,266,500 B2 (**Pls.' Ex. H**)<br>*See, e.g.*, Col. 3 - 4, Lines 55 – 65; Claim 18. |

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

| 1k. **determining, via said processor, the orientation of the electronic screen displaying the text of the text artifact;** | Disclosed by US 7,266,500 B2 <br> *See, e.g.*, Claim 7; Claim 10; Col. 4, Lines 27 – 34. |
|---|---|
| 1l. **altering, via said processor, said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words.** | Disclosed by US 6,212,498 B1 <br> *See, e.g.*, Claim 20; Col. 21, Lines 21 – 31. |

Further, on the issue of whether a POSITA would be motivated to combine the prior art identified by Plaintiffs, Belleau's expert witness offers merely a conclusory statement that he does "not believe that there is any motivation to combine these references to render obvious the claims" without any reasoning or discussion with respect to any specific reference. This conclusory statement is insufficient to establish that Plaintiffs' invalidity defenses lack merit.

While the motivation to combine the prior art referenced by Plaintiffs (including the exemplary references identified above that similarly involve speech recognition and the comparison of stored words and spoken words) is self-evident, Plaintiffs' technical expert will provide testimony to further support Plaintiffs' position that a POSITA would be motivated to combine these references.

Additionally, Belleau's opinions with respect to secondary considerations of nonobviousness should not be afforded any weight. As Belleau does not present any evidence that its PromptSmart product practices the claims of its own patent, it is not entitled to a rebuttable presumption that there is a nexus between the alleged evidence of secondary considerations and the asserted claims. *See, e.g.*, *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (stating that "in order to accord substantial weight to secondary considerations in an obviousness analysis, the evidence of secondary considerations must have a 'nexus' to the claims"

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

and "the patentee bears the burden of showing that a nexus exists").  Plaintiffs' expert witness will also provide testimony to rebut Belleau's self-serving statements regarding claims of success and praise of the PromptSmart product.[5]

### 2.   Belleau has not Met its Burden with Respect to Patentability.

Belleau has not established that there is no substantial question as to the patentability of the '646 Patent under 35 U.S.C. §101.  The Supreme Court has established a two-step framework for evaluating patent eligibility under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  Under *Alice*, a court must first "determine whether the claims at issue are directed to a patent-ineligible concept."  *Alice*, 573 U.S. at 217.  If claims are directed towards a patent-ineligible concept, a court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application."  *Id.* (citation omitted).

### a.   The Asserted Claims are Directed Towards an Abstract Idea.

The asserted claims of the '646 Patent are directed towards an abstract idea.  In assessing *Alice* step one in cases involving computer functionality, this Court has "required the claims to be directed to an improvement in the functionality of the computer or network platform itself …. [I]t is not enough, [] to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020).  Software claims may be eligible when "the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers" and "the claim is properly characterized as identifying a specific improvement ***in computer***

---

[5] Griffin indicated that he created Speakflow after being dissatisfied with other teleprompter applications available on the market, including Belleau's PromptSmart.  Griffin Dep. (Pls.' Ex. B) 82:17–83:7.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

*capabilities* or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe, Inc*., 978 F.3d 1278, 1293 (2020).  The Federal Circuit has found claims "relating to collecting, analyzing, and displaying information" to be directed to an abstract idea. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020)("[C]ollecting information, analyzing it, and displaying certain results of the collection and analysis" are "a familiar class of claims 'directed to' a patent-ineligible concept").  Furthermore, "improving a user's experience while using a computer application is not, without more, sufficient to render the claims" patent-eligible at *Alice* step one.  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

Belleau argues that "a voice controlled teleprompter is a tangible invention that can be easily perceived" without any support.   Contrary to Belleau's position, the concept of a teleprompter, including analyzing and displaying spoken words, is abstract and subject to section 101.  The Federal Circuit has found similar claims to be directed towards an abstract idea.  *See, e.g*., *W. View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 925–26 (Fed. Cir. 2017).  In *West View Research*, the Court held that a claim that recited a "computerized apparatus capable of interactive information exchange with a human user" via "a microphone," "one or more processors," a "touch-screen input and display device," a "speech synthesis apparatus" with "at least one speaker," an "input apparatus," and a "computer program" that receives the user's input and generates an audible or visual result" was abstract and lacked an inventive concept.  Even if the Court were to find the concept of a *teleprompter* to not be abstract, step one of the *Alice* analysis focuses on the claims themselves and the asserted claims of the '646 Patent do not recite a teleprompter or any other tangible invention.  Rather, the asserted claims, like those in *West View Research*, are directed towards software: "a computer-implemented method for dynamically presenting a

15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

prewritten text in a graphical user interface." Indeed, Belleau describes the patentable aspect of its invention as "voice scrolling" and claims this is "an advancement in teleprompter **software**." *See* Def.'s Mem. (Dkt. No. 38) 4. As the claims are directed towards software, the *Alice* step-one inquiry turns on whether "the claims focus on specific asserted improvements in *computer capabilities* or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022).

The asserted claims do not focus on any specific improvements to computer capabilities and merely involve general steps performed on a computer using conventional computer activity. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("[g]eneralized steps to be performed on a computer using conventional computer activity are abstract…."). The asserted claims[6] recite generalized steps and functional language such as "receiving"; "storing"; "retrieving"; "generating"; "comparing"; "determining"; and "altering" accomplished by generic computer components (*e.g.* "via said processor"). *See*, *Elec. Power Group*, 830 F.3d at 1350 (discussing how "presenting," "receiving," "selecting," "synchronizing" are abstract ideas); *W. View Rsch.*, 685 F. App'x at 925–26. The '646 Patent does not disclose any particular improvement in computer technology necessary to track and present a script to a reader by recognizing spoken words. *C.f.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (finding the claims not abstract because they were directed to an improvement in the functioning of a computer). Thus, the focus of the asserted claims is not on an improvement in computers as tools,

---

[6] Because Belleau has not distinguished any of the asserted claims from one another for the purposes of this analysis, Plaintiffs treat claim 1 as representative. The dependent claims include well understood and conventional subject matter including highlighting words in different colors and other generic display screen variations.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

but on certain independently abstract ideas that use computers as tools.  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021).  Accordingly, the asserted claims are directed to an abstract idea.

### b.   Belleau has not Identified any Inventive Concept.

The asserted claims do not contain an inventive concept under *Alice* step two.   An "inventive concept" requires that a claim "recite a specific, discrete implementation of the abstract idea" and that the "particular arrangement of elements is a technical improvement over [the] prior art." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  "If a patent uses generic computer components to implement an invention, it fails to recite an inventive concept under *Alice* step two." *W. View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017)

The concepts Belleau presents as "inventive" ██████████████████████████ ████████████████████████████████████████████████████████████ have long existed, encompassing basic inherent functions of generic smartphone software and hardware components including "voice to text," find/search features, and sensors that recognize display screen rotation.   Belleau's unsupported testimony on this issue should be rejected.[7] *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) ("We do not accord weight to conclusory expert testimony").   Further, all of the recited functions use computers to perform tasks that could be accomplished by humans.  *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (using a computer to "automate 'pen and paper' methodologies to conserve human resources and minimize errors" does not confer patent

---

[7] In its Answer, Belleau does not plead that the claims of the '646 Patent contain an inventive concept.  Dkt. No. 9.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY

eligibility).  While a computer may make the process of displaying and highlighting text as it is read more efficient, highlighting text/scrolling through text as it is being read is no modern invention and can be and has been done by humans without any computer technology.  In sum, the asserted claims recite conventional elements using generic computer components at a high level of generality and do not rise to the level of an inventive concept.  *W. View Rsch.*, 685 F. App'x at 927.  Accordingly, Belleau has not established that Plaintiffs' position with respect to section 101 patentability lacks substantial merit.

## II.     Belleau Fails to Allege Irreparable Harm, Instead Speculating About Financial Harm that Could Easily be Measured and for Which a Monetary Award is Adequate.

In support of its motion for a preliminary injunction, Belleau fails to allege irreparable harm, instead speculating about financial harm that could easily be measured and for which a monetary award is adequate.  Establishing a likelihood of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction."  *Hodnett*, 2021 WL 535485, at *6.  A movant "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.  *Id.*  Also, a movant "must establish that . . . there is a causal nexus between the alleged infringement and the alleged harm."  *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).  There is no "presumption that irreparable injury will result from the continued sale of infringing devices."  *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1347 (Fed. Cir. 2013) (Mayer, J., dissenting).

Again, Belleau's delay in bringing an infringement action and its inexcusable eighteen-month delay in seeking a preliminary injunction weigh heavily against finding that Belleau has suffered and will suffer irreparable harm.  Furthermore, Belleau relies on insufficient evidence and self-serving conclusions in its attempt to show irreparable harm and fails to establish the requisite

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

causal nexus between this harm and Plaintiffs' actions.  Since Belleau cannot establish a likelihood of irreparable harm, the Court should deny Belleau's Motion.

>    A.    **Belleau's Delay in Bringing an Infringement Action and Delay in Bringing this Motion Are Compelling Evidence of a Lack of Irreparable Harm.**

In addition to being an independent basis on which the Court should deny Belleau's motion, Belleau's delay in bringing an infringement action and its unjustifiable eighteen-month delay in bringing its Motion are compelling evidence that Belleau has not suffered and will not suffer irreparable harm.  Courts should "consider a party's 'delay in bringing an infringement action and seeking a preliminary injunction,' which may 'suggest that the patentee is not irreparably harmed by the infringement.'"  *Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991, at \*46 (S.D.N.Y. Dec. 6, 2019) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012)); *see also Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("[E]vidence that a patent owner unduly delays in bringing suit against an alleged infringer negates the idea of irreparability.").  Courts generally grant preliminary injunctions "under the theory that there is an urgent need for speedy action to protect the [movant's] rights."  *Hodnett*, 2021 WL 5354850, at \*6.

Here, after sending Plaintiffs a cease-and-desist letter on April 27, 2021, Belleau delayed bringing an infringement counterclaim until July 13, 2021—two and a half months after its initial threat to take legal action and only after Plaintiffs first brought legal action against Belleau.  Sadkin Decl. Ex. N (Dkt. No. 40-14); Dkt. No. 9.  Belleau then delayed seeking a preliminary injunction for eighteen months after Plaintiffs filed this lawsuit.  Dkt. No. 34. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

█████████████████████████████████ Belleau's delays—and its inability to justify these delays—undercut its allegations of irreparable harm.

> **B.      Belleau Offers Insufficient Evidence and Self-Serving Conclusions Which Fail to Substantiate Belleau's Claims of Irreparable Harm.**

By relying on insufficient evidence and self-serving conclusions, Belleau fails to substantiate its claim that Plaintiffs' sales cause Belleau irreparable harm.  Although "loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm," *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citation omitted), these claims must be "**supported by sound evidence**." *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 U.S. Dist. LEXIS 181935, at *78 (E.D.N.Y. Nov. 2, 2017) (emphasis added).  Movants "bear the burden of proof and persuasion." *Ideavillage Products Corp. v. A1559749699-1*, Slip Copy (2020).

Belleau's talismanic recitation of these harms is not supported by the meager evidence it puts forth to substantiate its claims. ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Likewise, Belleau vigorously asserts that it is the "market leader" and a "pioneer in the field," arguing that Plaintiffs' existence compromises Belleau's reputation and goodwill.  Def.'s Mem.

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

(Dkt. No. 38) 20–21; Sadkin Decl. (Dkt. No. 40) ¶¶ 7.  But Belleau fails to clearly define the relevant market, identify the metrics by which it deems itself the market leader, and explain how Plaintiffs' existence has impacted or will impact these metrics.

What Belleau offers as "direct evidence of irreparable harm" are mere anecdotes of "market participants . . . identifying Speakflow" and "switching to Speakflow."  Def.'s Mem. (Dkt. No. 38) 18.  Belleau provides three tweets by an Iowa-based substitute teacher recommending PromptSmart (in 2015 and 2018) and Speakflow (in 2021) as well as a tweet from a Sweden-based graphic designer recommending both PromptSmart and Speakflow.  Sadkin Decl. Ex. G (Dkt. No. 40-7); Sadkin Decl. Ex. H (Dkt. No. 40-8); Sadkin Decl. Ex. I (Dkt. No. 40-9); Sadkin Decl. Ex. J (Dkt. No. 40-10).  Additionally, Belleau provides an email exchange evidencing a single customer who, after experiencing unresolved technical issues with PromptSmart, indicated that she was switching to Speakflow.  Sadkin Decl. Ex. K (Dkt. No. 40-11).  Relying on these four tweets and an email exchange, Belleau claims it has been irreparably harmed and asks this Court to take urgent, extraordinary action.

21

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

    As part of its ongoing threats and intimidation tactics, Belleau again falsely claims that

██████████████████████████████████████[8] Def.'s Mem. (Dkt. No. 38)

1.  Relevant here, Belleau argues that "it is unlikely that Belleau will be able to collect on a final judgment" and, therefore, any quantifiable financial harm is irreparable.  Def.'s Mem. (Dkt. No. 38) 21–22.  This argument is without merit, particularly in light of Plaintiffs' modest sales and how these sales would be used to calculate damages, if awarded.  ████████████████████

████████████████████

---

[8] Belleau has continuously made this false claim since sending its April 27, 2021, cease-and-desist letter.  Sadkin Decl. Ex. M (Dkt. No. 40-13).  Belleau arrived at this erroneous conclusion after searching the records of various states yet failing to investigate any Delaware records, the state where CG3 Media is incorporated.  *Id.*

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

### C.     Belleau has not Established the Requisite Causal Nexus Between Plaintiffs' Conduct and the Alleged Harm.

Belleau fails to establish a causal nexus between Plaintiffs' conduct and Belleau's alleged financial harm as required to show entitlement to a preliminary injunction.  To establish a causal nexus, movants must show "that the patented features impact consumers' decisions to purchase the accused devices." *Apple, Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015).  This requirement "is simply a way of distinguishing between irreparable harm caused by patent infringement and irreparable harm caused by otherwise lawful competition—e.g., 'sales that would be lost even if the offending feature were absent from the accused product.'"  *Apple, Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d at 1324 (Fed. Cir. 2012)).

Again, Belleau relies on insufficient evidence and self-serving conclusions, claiming that Speakflow's voice tracking feature drives its sales.  Def.'s Mem. (Dkt. No. 38) 22.  As evidence of this, Belleau cites to Sadkin's Declaration and several exhibits highlighting the importance of PromptSmart's voice tracking feature—not Speakflow's.  *See id.* (citing Sadkin Decl. (Dkt. No. 40) ¶¶13–21).  Although Speakflow advertises its voice tracking feature on its website, this is just one of many advertised features: "sync multiple screens" and "[c]ontrol multiple devices at once" with "[n]o setup" and "zero configuration," "[c]ombine Speakflow with . . . teleprompter hardware to record professional content," exercise "complete control" over scrolling (including manual and automatic scrolling at a constant pace), "share scripts" and "sync devices" as a production team, "record up to 1080p HD videos" in the user's web browser, auto-save scripts and "provide[] revision history for the whole team," "[s]et other app windows as the background" to maintain view of the audience, and utilize all of these features without "clunky downloads."  Wasserman Decl. Ex. 20 (Dkt. 39-21).

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

Belleau also offers the name "Speakflow" as evidence that the voice tracking feature drives the sales of Plaintiffs' product.  Def.'s Mem. (Dkt. No. 38) 22.  But, as Griffin explained, "Speakflow" is simply a "nice," "unique" name likely to have "good S[earch ]E[ngine ]O[ptimization]," and this name would be equally fitting for a teleprompter application lacking a voice tracking feature.  Griffin Dep. (Pls.' Ex. B) 119:16–20.  By failing to provide sufficient evidence to support its conclusions, Belleau fails to establish that sales of Plaintiffs' feature-rich product are driven by the voice tracking feature.

### III.   Both the Balance of Hardships and the Public Interest Weigh Against Granting Belleau's Delayed Request for Broad Injunctive Relief.

Belleau seeks broad injunctive relief that would disturb the longstanding status quo, and, as such, the balance of hardships and the public interest weigh against granting Belleau's Motion.  When weighing the balance of hardships, courts "assess[] the relative effect of granting or denying an injunction on the parties."  *Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991, at *49 (S.D.N.Y. Dec. 6, 2019).  And "[t]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects."  *TEK Global, S.R.L. v. Sealant Systems Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019) (citation omitted).

Here, Belleau asks that the Court order Plaintiffs to stop "making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using their Speakflow software product[,] . . . to take down speakflow.com[,] and to remove all marketing materials, postings, and social media accounts about Speakflow"— effectively forcing Plaintiffs out of the marketplace entirely.  Def.'s Mem. (Dkt. No. 38) 24–25.  This sweeping injunction would devastate Plaintiffs' business even if it was lifted at the conclusion of this litigation.  In contrast, denying Belleau's

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

motion would merely maintain the status quo, with all parties continuing to operate their businesses—as they have done throughout the eighteen months of litigation thus far—until a final judgment is reached on the merits.  As such, the balance of hardships disfavors granting Belleau's Motion.

Moreover, there is a strong public interest in reserving the drastic relief Belleau requests for truly urgent, extraordinary situations.  Belleau's incessant procrastination demonstrates that injunctive relief prior to a final judgment is not necessary.  And although it is good public policy to protect the rights of patent owners, this must be balanced against the competing public interest in fostering competition, particularly where, as here, patent owners ask courts to entirely eliminate competitors from the marketplace prior to any finding of infringement.  Belleau—offering an inconsistent narrative, minimal evidence, and a plethora of unfounded conclusions—requests that this Court eliminate Plaintiffs' legitimate business.  As such, the balance of hardships and the public interest weigh against granting Belleau's motion.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Belleau's Motion for a Preliminary Injunction.

Date: December 6, 2022                                  Respectfully Submitted,

                                                       /s/ Dariush Keyhani
                                                       Dariush Keyhani
                                                       Keyhani LLC
                                                       1050 30th Street NW
                                                       Washington, DC 20007
                                                       Telephone: (202) 748-8950
                                                       Fax: (202) 318-8958
                                                       dkeyhani@keyhanillc.com
                                                       *Attorneys for Plaintiffs*

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES' ONLY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2022, I electronically filed the foregoing document and referenced exhibits and declarations with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ Dariush Keyhani</u>
Dariush Keyhani

26