USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/1/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CG3 MEDIA, LLC, and COREY GRIFFIN, <br><br> Plaintiffs, <br><br> -against- <br><br> BELLEAU TECHNOLOGIES, LLC, <br><br> Defendant. | 1:21-cv-04607-MKV <br><br> **MEMORANDUM OPINION <br> AND ORDER DENYING <br> PRELIMINARY INJUNCTION** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs CG3 Media, LLC ("CG3") and Corey Griffin (collectively, "Plaintiffs") filed this action in May 2021, seeking a declaratory judgment that Speakflow, their online teleprompter software application, does not infringe "any valid or enforceable claim" of United States Patent No. 9,953,646 ("the '646 Patent"), owned by Defendant Belleau Technologies, LLC ("Belleau"). Complaint ¶ 1 [ECF No. 1] ("Compl."). In the alternative, Plaintiffs seek a determination that the '646 Patent is invalid and unenforceable. Compl. ¶ 1.

Defendant timely answered the Complaint and asserted a counterclaim alleging patent infringement. *See* Belleau Answer and Counterclaim [ECF No. 9] ("Answer" or "Counterclaim"). *Nearly seventeen months after this action was filed*, Defendant filed a motion for a preliminary injunction. Defendant requests that this Court, among other things, (i) enjoin Plaintiffs from any conduct that infringes the '646 Patent, including "making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using their Speakflow software product," and (ii) "[r]equiring Plaintiffs to take down speakflow.com and to remove all marketing materials, postings, and social media accounts about Speakflow." *See* Motion for Preliminary Injunction [ECF No. 34] ("Motion"); Memorandum of Law in Support 24–25 [ECF No. 38] ("Def. Mem."). For the reasons outlined below, Defendant's motion for a preliminary injunction is DENIED.

1

**BACKGROUND**

Defendant/Counterclaim Plaintiff Belleau makes and sells a teleprompter software application, PromptSmart, that automatically scrolls teleprompter text while a user is speaking. Answer ¶ 7, Counterclaim ¶ 25. Belleau owns the '646 Patent, which claims a method by which a teleprompter can automatically scroll text along with a user's voice. Counterclaim ¶¶ 30, 31. Plaintiff CG3 owns Speakflow, another online teleprompter software application. Compl. ¶ 4. Griffin is the founder of CG3. Compl. ¶ 5.

In April 2021, Belleau's manager, Jeremy Sadkin, sent a cease-and-desist letter to Griffin, alleging that the Speakflow application infringed on the '646 Patent. *See* Declaration of Jeremy Sadkin in Support ("Sadkin Dec."), Exhibit M [ECF No. 40-13]. Several weeks later, Plaintiffs filed their Complaint, seeking "a declaration of their rights that the '646 Patent is invalid, unenforceable, and not infringed." Compl. ¶ 19. Belleau answered and asserted a counterclaim for patent infringement, *see* Counterclaim ¶¶ 55–63, which Plaintiffs answered. *See* Answer to Counterclaim [ECF No. 11].

Thereafter, the parties engaged in discovery and filed claim construction briefing which remains *sub judice*. *See* Opening Claim Construction Brief [ECF No. 26] ("Def. CCB"); Responsive Claim Construction Brief [ECF No. 27] ("Pl. CCB"); Reply Claim Construction Brief [ECF No. 28] ("Reply CCB").

Nearly seventeen months after this action was filed, and while claim construction was pending, Belleau filed a motion for a preliminary injunction. Belleau did not request expedited briefing or an expedited hearing. Rather, Belleau noticed its motion on the standard schedule outlined in Local Civil Rule 6.1(b), *see* Motion 2, and the Court entered an Order setting a standard briefing schedule. *See* November 15 Order [ECF No. 41]. Thereafter, the parties filed, and the

Court granted, a Joint Letter Motion seeking an extension of time to complete briefing. Joint Letter Motion [ECF No. 43]; November 16 Order [ECF No. 44]. Pursuant to that schedule, Plaintiffs submitted a Memorandum of Law in Opposition [ECF No. 46] ("Pl. Mem."), and Belleau filed a Reply Memorandum of Law [ECF No. 51] ("Reply"). The parties filed letter motions to seal along with each brief. *See* Letter Motions to Seal [ECF Nos. 33, 45, 50].

After briefing was completed, the Court scheduled a hearing on Belleau's motion for injunctive relief. *See* Scheduling Order [ECF No. 60.] The parties jointly requested an adjournment of the hearing. *See* Joint Letter Motion to Adjourn [ECF No. 61]. The Court held a hearing on Defendant's motion for a preliminary injunction on February 16, 2023. *See* Order [ECF No. 62]; Preliminary Injunction Hearing Transcript ("Transcript").[1]

This Opinion constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(2).

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under the Patent Act, this Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. District courts have "broad discretion in determining whether the facts of a case warrant an injunction and in determining the scope of the injunctive relief." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992).[2]

---

[1] In addition to the declarations submitted in connection with briefing on the preliminary injunction motion (to which neither side objected), the Court asked the parties whether they intended to present evidence at the preliminary injunction hearing. *See* Scheduling Order [ECF No. 60.] The parties informed the Court that the hearing would "proceed based on oral argument only." *See* Joint Letter Motion to Adjourn [ECF No. 61].

[2] The Federal Circuit has "exclusive jurisdiction" over appeals arising under "any Act of Congress relating to patents," 28 U.S.C. § 1295(a)(1), and as such, Federal Circuit authority controls in this action. Second Circuit law

Four factors guide this Court's analysis of Belleau's request for injunctive relief: "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338–39 (Fed. Cir. 2003). Although no single factor is determinative, "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis in original).

## DISCUSSION

### I.   Likelihood of Success on the Merits

A patentee seeking a preliminary injunction "'must show that, in light of the presumptions and burdens applicable at trial, it will likely prove' infringement and 'that the patent will likely withstand' a validity challenge." *GeigTech E. Bay LLC v. Lutron Elecrtonics Co.*, No. 18 CIV. 5290 (CM), 2018 WL 4360792, at *2 (S.D.N.Y. Sept. 5, 2018) (quoting *Tate Access Floors, Inc., v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002)). Where an alleged infringer "raises a 'substantial question' concerning validity, enforceability, or infringement, and the patentee does not demonstrate that the defense 'lacks substantial merit,' [a] preliminary injunction should not issue." *Id.* (quoting *Genentech, Inc., v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)). Here, the Court concludes that Plaintiffs, the alleged infringers, have raised substantial questions regarding infringement and the patentee, Belleau, has not demonstrated that the defense lacks substantial merit. *Id.*

---

is also relevant, as "[t]he grant, denial, or modification of a preliminary injunction is not unique to patent law, so [the Federal Circuit] applies the law of the regional circuit when reviewing and interpreting such a decision," in addition to its own "body of precedent." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (cleaned up).

1.   *Infringement*

Belleau contends that Speakflow performs the method claimed in the '646 Patent and is therefore infringing. Def. Mem. 9–12. Plaintiffs disagree, explaining that Speakflow does not infringe because it "only has part of the functionality" outlined in the '646 Patent. Transcript 47:6. Specifically, Plaintiffs clarify that Speakflow does not "carry out all the functions," and instead, requires an internet connection so that "a third-party server . . . [can] carry out [some of the other] functions [specified] in the claim[]." Transcript 47:6–9, 47:24–25.

"[B]efore a claim of patent infringement can be evaluated, a court must determine the scope and meaning of any disputed terms and limiting expression in the claims." *GeigTech*, 2018 WL 4360792, at *4 (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)). "A district court is not required to make 'a comprehensive and final claim construction in a preliminary injunction proceeding' but must conduct at least a preliminary or abbreviated claim construction to the extent necessary to determine a movant's likelihood of success on the merits." *Sure Fit Home Prod., LLC v. Maytex Mills, Inc.*, No. 21 CIV. 2169 (LGS), 2022 WL 3594578, at *2 (S.D.N.Y. Aug. 23, 2022) (quoting *Shuffle Master, Inc. v. VendingData Corp.*, 163 F. App'x 864, 867–68 (Fed. Cir. 2005)).

At the claim construction stage, the district court's duty is to resolve a dispute about claim scope that has been raised by the parties. *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). Claim terms are presumed to be given their ordinary and customary meaning, as understood by a person of ordinary skill in the art as of the patent's priority date, considering the entirety of the patent. *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020).

Claim 1 of the '646 Patent reads as follows, with the disputed terms emphasized in bold:

1. A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising:

    a) receiving a text artifact, said text artifact containing a plurality of artifact words;

    b) storing, via *a processor*, said text artifact in a memory device of a computer;

    c) *retrieving, via said processor*, said text artifact;

    d) displaying said text artifact on the display screen of said computer;

    e) receiving a vocal input;

    f) *generating, via said processor, a text file* representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words;

    g) *comparing, via said processor*, a predetermined number of said hypothesis words to a predetermined number of said artifact words;

    h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words;

    i) *altering, via said processor*, the display on said display screen to display said match location on said display screen of said computer;

    j) *determining, via said processor*, the font size of the text of said text artifact as displayed on said display screen;

    k) *determining, via said processor*, the orientation of the electronic screen displaying the text of the text artifact;

    l) *altering, via said processor,* said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words.

*See* Declaration of Bryon Wasserman ("Wasserman Dec.") Exhibit 1 [ECF No. 39-2] ("'646 Patent"); Def. Mem. 10–12. Relevant here, the parties dispute the meaning of the claim terms: "*storing*, via *a processor*," "*retrieving*, via *said* processor," "*generating*, via *said* processor," "*comparing*, via *said* processor," "*altering*, via *said* processor," "*determining*, via *said* processor,"

"*determining*, via *said* processor," and "*altering*, via *said* processor." *See* Def. CCB 9–14; Pl. CCB 5–8.

Although the parties' claim construction and preliminary injunction briefing were opaque, oral argument revealed several areas of agreement between the parties and narrowed the dispute. The parties clarified at oral argument that both sides agree that "a processor," identified as a disputed term, refers to one or more processors, as Counterclaim Plaintiff Belleau contended in its claim construction briefing. Transcript 24:2–4, 39:21–25, 40:12–13, 41:18–21, 48:20–22; Reply 3. This construction is consistent with settled law. *See 01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) ("As a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" (citation omitted)).

Similarly, both parties clarified that they agree that "said processor" refers back to the antecedent "a processor." Transcript 40:23–41:4, 41:22–24, 49:13–23, 66:6–15. This construction too is supported by governing law. *See Creative Internet Advert. Corp. v. Yahoo!, Inc.*, 476 F. App'x 724, 728 (Fed. Cir. 2011) (explaining that "each use of the phrase '*said* end user communication message' . . . refers to the antecedent phrase" (emphasis added)).

Where the parties continue to disagree, and what this dispute really boils down to, is whether *at least one* of the processors encompassed by the antecedent "a processor" must perform *all* of the functions specified in the later sub-elements (*i.e.*, "storing," "retrieving," "generating," "comparing," "altering," and "determining") *or* whether those functions may be divided among and performed individually by multiple different processors encompassed with the antecedent "a processor." Transcript 41:5–42:9, 66:18–23. Since CG3's teleprompter application uses not only its own processor but *also* the internet, its system is not performing all of the functions on a single device or processor. Transcript 46:22–48:18. As such, if the '646 Patent requires that at least one

processor must perform all functions—as Plaintiffs contend—CG3's Speakflow application does not infringe on the '646 Patent. Conversely, if—as Belleau contends—the listed functions can be performed by different devices included within the antecedent processor, the Speakflow application may well infringe on the '646 Patent.

Plaintiffs have raised a substantial question on this issue and the Court is unable to resolve this narrow dispute on the record before it in connection with Belleau's motion for a preliminary injunction. As an initial matter, Federal Circuit precedent supports Plaintiffs' contention that at least one processor must perform all of the "storing," "retrieving," "generating," "comparing," "altering," and "determining" functions. In *Traxcell Technologies, LLC v. Nokia Solutions & Networks Oy*, 15 F.4th 1136 (Fed. Cir. 2021), the patent at issue "recite[d] a 'computer' or 'first computer' capable of taking certain actions." *Id.* at 1143. As here, the parties disputed "whether these capabilities all belong[ed] to one computer or [could] be spread among multiple." *Id.* The district court concluded that "a *single* computer" must "perform each function." *Id.* (emphasis in original). The Federal Circuit agreed, explaining that "[a]s a matter of plain language, reciting 'a computer' (or a 'first computer') that performs a function, and then further reciting that '*the* computer' (or '*said* first computer') performs multiple additional functions, suggests that such 'computer' *must be tied to all those functions*." *Id.* at 1143–44 (emphasis added). CG3 argues that the same is true of the "said processor" language here.

Belleau does not demonstrate in its motion for a preliminary injunction "that [this] defense 'lacks substantial merit.'" *GeigTech*, 2018 WL 4360792, at *2. Although its expert report asserts in a conclusory fashion that "a single processor does not have to perform all of the claimed steps," Wasserman Dec. Affidavit of J. Frankovitz ¶ 78 ("Frankovitz Dec.") [ECF No. 39-1], the Court

8

need "not accord weight to conclusory expert testimony," *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021).

Nor is the Court persuaded that the doctrine of equivalents erases the substantial question regarding Belleau's claim. That doctrine prevents an "unscrupulous copyist" from making "unimportant and insubstantial changes . . . to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 607 (1950). Here, Belleau baldly asserts that "how many processors are involved in the claimed method" is "a meaningless and insubstantial difference." Def. Mem. 14. Its expert proffers the same construction. *See* Frankovitz Dec. ¶ 82 ("A text file generated by an external voice conversion processor is insubstantially different from a text file generated [by] the same processor that performs the other claim steps."). Even assuming those conclusory assertions were accurate, the doctrine of equivalents may not be used to circumvent a claim limitation. *See Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("The doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" (citation omitted)); *Enzo Biochem, Inc. v. Amersham PLC*, 902 F. Supp. 2d 308, 319 (S.D.N.Y. 2012) ("Because the Court's claim construction has expressly excluded tethered fluorescent molecules from the definition of 'soluble signal' . . . to hold that a tethered fluorescent molecule is an insubstantial change would vitiate this claim limitation." (emphasis omitted)). Belleau therefore may not use this doctrine to "erase" the "said processor" language from its claim. *Conopco*, 46 F.3d at 1562. For these reasons, the Court finds a substantial question regarding infringement, which defeats Belleau's argument that it is likely to succeed on the merits.

2. *Validity*

The '646 Patent, like all patents, is presumptively valid. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."); *see also Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("[A] patent is presumed valid, and this presumption exists at every stage of the litigation."). "Where the alleged infringer attacks the validity of the patent, 'the burden is on the challenger to come forward with evidence of invalidity,' which the patentee must then rebut." *Tinnus Enters. v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) (citation omitted)). Where, as here, a patentee seeks a preliminary injunction, the alleged infringer need only "raise[] a 'substantial question' concerning [the patent's] validity." *GeigTech*, 2018 WL 4360792, at *2. In resisting Belleau's application for injunctive relief, Plaintiffs attack the validity of the '646 Patent on three grounds. None is persuasive.

First, Plaintiffs contend that the '646 Patent is anticipated. *See* Pl. Mem. 11–14. That is incorrect. "A patent claim is invalid as anticipated only if *each and every element* of the claim is expressly or inherently disclosed in a *single* prior art reference." *Guangdong Alison Hi-Tech v. Int'l Trade Commission*, 936 F.3d 1353, 1363–64 (Fed. Cir. 2017) (emphasis added). Indeed, "anticipation requires there to be *no difference* between the claimed invention and the reference disclosure as viewed by a person of ordinary skill in the art." *Bettcher Indus., Inc. v. Bunzi USA, Inc.*, 661 F.3d 629, 641 (Fed. Cir. 2011) (citation omitted) (emphasis added). Plaintiffs allege that various parts of the claim of the '646 Patent were previously disclosed by *several* other patents. *See* Pl. Mem. 11–13. Because Plaintiffs do not allege that the '646 Patent in its entirety was "disclosed in a *single* prior art reference," *Guangdong*, 936 F.3d at 1363–64 (emphasis added), Plaintiffs do not raise a substantial question regarding anticipation.

Second, Plaintiffs contend that the '646 Patent is obvious in light of a combination of the prior art, contending that "the motivation to combine the prior art . . . is self-evident." Pl. Mem. 13–14.  But Plaintiffs have "failed to show that there was any motivation to combine the prior art references."  *Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19CV9035 (DLC), 2019 WL 6681563, at *17 (S.D.N.Y. Dec. 6, 2019).  Because "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness," Plaintiffs' bare assertion of obviousness is insufficient to raise a substantial question.  *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019).

Finally, Plaintiffs argue that the '646 Patent is invalid under Section 101 of the Patent Act, 35 U.S.C. §§ 1 *et seq.*, because it is directed towards an abstract idea.  Pl. Mem. 14–17.  Evaluating patent eligibility under Section 101 involves a two-step framework.  *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).  At step one, "we determine whether a patent claim is directed to an unpatentable law of nature, natural phenomena, or abstract idea."  *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (citing *Alice*, 573 U.S. at 217).  "If so, we proceed to step two and determine whether the claim nonetheless includes an 'inventive concept' sufficient to 'transform the nature of the claim' into a patent-eligible application."  *Id.* (quoting *Alice*, 573 U.S. at 217).  "In cases involving software innovations, [the step one] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool."  *Int'l Bus. Machines*, 50 F.4th at 1377 (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020)).

The Court does not find a substantial question on invalidity.  Plaintiffs contend that Belleau's method claim is directed towards an abstract idea because the '646 Patent does not "focus

11

on any specific improvements to computer capabilities and merely involve[s] general steps performed on a computer using conventional computer activity." Pl. Mem. 16. In support of this view, Plaintiffs rely on the Federal Circuit's unreported opinion in *West View Research, LLC v. Audi AG*, 685 F. App'x 923 (Fed. Cir. 2017). *See* Transcript 55:23–56:9; Pl. Mem. 15–16. But *West View* does not support Plaintiffs' argument or even raise a substantial question. "[T]he plain focus of the claims" in *West View* was not "on an improvement to the computer functionality itself." 685 F. App'x at 926 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)). In fact, the claimed invention did not "go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query." *Id.* The '646 Patent, in contrast, does more than simply "present[] the results of abstract processes of collecting and analyzing information." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Specifically, the '646 Patent outlines a method for "controlling the presentation and flow of text in a teleprompter-type application." *See* Frankovitz Dec. ¶ 108. In support of its position, Belleau has proffered evidence that the claimed method operates by "converting spoken words to text, comparing them to script text, presenting match locations, detecting font size and orientation, and eliminating words from consideration." Frankovitz Dec. ¶ 108. The method here *is* "directed to a specific improvement to the way computers operate," *Enfish*, 822 F.3d at 1336, because it was designed to address "certain limitations" in "hardware and software[-]based teleprompters" that scrolled at "a constant rate," risking that readers "fall behind the script" or "get lost," Frankovitz Dec. at ¶¶ 52–54. As such, Plaintiffs do not raise a substantial question regarding invalidity.

In sum, while the Court finds no substantial question regarding the validity of the '646 Patent, Plaintiffs have raised substantial questions regarding infringement. Belleau therefore cannot show a likelihood of success on the merits at this time.

## II.     Irreparable Harm

The Court may not grant a preliminary injunction absent a showing of irreparable harm. *See Amazon.com*, 239 F.3d at 1350.  To show irreparable harm, "a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).  A party seeking to establish irreparable harm "must 'articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages' and may not rest on unsupported allegations that such harm is likely to occur."  *Sure Fit Home Prod., LLC v. Maytex Mills, Inc.*, No. 21 CIV. 2169 (LGS), 2021 WL 2134863, at *2 (S.D.N.Y. May 26, 2021) (quoting *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349–50 (Fed. Cir. 2020)).

Belleau challenged Plaintiffs' Speakflow application as infringing on Belleau's '646 Patent as early as April 2021, but it did not file suit seeking to protect its patent.  Rather, *Plaintiffs* commenced litigation a month later to resolve the dispute.  Even after it was sued with regard to the validity of its patent and its claim of infringement, Belleau did not file a motion for injunctive relief for *nearly seventeen months* after Plaintiffs filed this lawsuit.  The Court weighs this delay heavily in its irreparable harm analysis.  *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) ("[I]t was reasonable for the district court to consider the issue of delay and to find that Apple had not proceeded as quickly as it could have in seeking preliminary injunctive relief."); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("[E]vidence

that a patent owner unduly delays in bringing suit against an alleged infringer negates the idea of irreparability.").

Belleau attempts to excuse its delay of close to a year and half by asserting that it "did not seek an injunction earlier . . . because it was necessary [first] to obtain confidential source code evidence from Plaintiffs." Def. Mem. 1. The Court is unpersuaded. First, it is unclear why, previously having sent a cease-and-desist letter alleging infringement, Belleau needed to obtain Plaintiff's confidential source code before moving for a preliminary injunction. While the Court appreciates that Belleau elected "not to file a premature motion for a preliminary injunction," *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 5054711, at *31 (E.D.N.Y. Nov. 2, 2017), it is unclear why the source code constituted "*necessary* evidence to prepare a supported motion," Reply 3 (emphasis added). Indeed, in its brief in support of this motion, Belleau's only substantive reference to the source code is a single footnote stating that Griffin "referred to Belleau's product as a 'bitch ass' in a comment in his source code." Pl. Mem. 23 n.5. That footnote was hardly necessary or even relevant.

Second, even accepting that obtaining the source code *was* necessary to file this motion, Plaintiffs contend (and Belleau does not object) that the source code was fully produced to Belleau *nine months before* Belleau filed this motion. *See* Declaration of Frances H. Stephenson in Opposition, Exhibit E [ECF No. 49-5]. This nine-month delay *significantly* undermines any suggestion of irreparable harm. *See Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("delays of as little as ten weeks [are] sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction"); *Shenzhen Chengront Tech. Co. v. Besign Direct*, No. 1:22-CV-10281 (JLR), 202F2 WL 17741496, at *1 (S.D.N.Y. Dec.

9, 2022) ("Generally speaking, several months' delay in seeking injunctive relief indicates Plaintiff will not be irreparably harmed by further delay in getting injunctive relief.").[3]

Even if Belleau's year plus delay were somehow excusable, its leisurely prosecution of this motion has further undermined its assertion of irreparable harm. In its moving papers, Belleau did not request an expedited briefing schedule or hearing. Instead, it provided notice that briefing should comply with the *standard* schedule outlined in Local Civil Rule 6.1(b). Motion 2. After the Court issued a standard briefing schedule, Belleau (jointly with Plaintiffs) requested an extension of the briefing deadlines. *See* Joint Letter Motion [ECF No. 43]. And when this Court scheduled a hearing on the pending motion, Belleau (again, jointly with Plaintiffs) requested a several week adjournment. *See* Joint Letter Motion to Adjourn [ECF No. 61]. Belleau's actions speak louder than its conclusory assertions and belie its claim of irreparable harm.

Significantly, too, Belleau has repeatedly conceded that its harm is compensable by money damages. For instance, Belleau's counterclaim for patent infringement requests "money damages for all prior acts of infringement." Counterclaim ¶ 27. Likewise, Belleau acknowledged at oral argument that it has provided evidence suggesting that only "a few" customers have switched from PromptSmart to Speakflow—and that such limited harm *could* be remediated with money damages. Transcript 32:20–22; 33:1–7. Finally, although Belleau contends that "each lost customer . . . results in ongoing lost revenues," Def. Mem. 6–7, it acknowledges that Plaintiffs use a subscription model to charge their customers a set amount, meaning its lost revenues are easily quantifiable. *See, e.g.*, *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 352 (S.D.N.Y.

---

[3] In its Reply Brief, Belleau also suggests that its delay was occasioned by needing to "conduct a deposition of Mr. Griffin, whose testimony Belleau's expert relies upon extensively." Reply 2. However, "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). Even if this argument were properly raised, Belleau deposed Griffin *nearly three and a half months before* this motion was filed. Stephenson Dec. Exhibit B [ECF No. 49-2]. In any event, Belleau conceded at oral argument that the "operative timeframe" is the "eight-month period from when the source code was produced in native form . . . until the [preliminary injunction] briefing was filed." Transcript 34:7–11.

2008) (concluding the alleged harm was "easily quantifiable and, therefore, [did] not warrant injunctive relief").

Belleau contends it has experienced "accelerating and increasing economic harm caused by Plaintiffs' infringement" during the pendency of the litigation. Def. Mem. 23. Specifically, Belleau states that it has seen "a persistent drop off in sales" purportedly stemming from "Plaintiffs' infringing product . . . erod[ing] Belleau's market position and siphon[ing] sales." Def. Mem. 5. In support of this assertion, Belleau provides a summary chart (partially replicated below):



Sadkin Dec. ¶ 24. Belleau asserts that its sales dropped in the second, third, and fourth quarters of 2021, after Plaintiffs' product entered the market in the first quarter of 2021. *See* Reply 8.

However, as Plaintiffs note, Belleau's sales later *increased* in the first and second quarters of 2022.[4] What's more, Belleau's own chart reflects that its sales were actually declining *before* Plaintiffs' product ever entered the market. As reflected in the above chart, Belleau's sales spiked in the second quarter of 2020, but then *decreased* from that escalated level in the third *and* fourth quarters of 2020.

Given the record before the Court, it is impossible to determine what might have caused the early 2020 spike or the subsequent weakening in sales. Plaintiffs suggest that Belleau's recent sales decline "is likely a return to normalcy following a period of unsustainable growth" occasioned by the COVID-19 pandemic. Pl. Mem. 21–22. The Court cannot rule out this possibility, or the possibility that Belleau's sales decline was caused by any number of other reasons. For instance, revenues may have dropped because users dislike or have difficulty using the PromptSmart software. *See* Sadkin Dec. Exhibit K at 2 [ECF No. 40-11] (user complains "I've spent far too many hours trying to get your software to work"). Although Belleau might be experiencing economic harm, this chart does not suggest that any decline in sales was *caused by* Plaintiffs' alleged infringement.

The Court finds Belleau's other irreparable harm arguments similarly unpersuasive. For instance, Belleau argues, with no evidentiary support, that "being forced to compete against products that incorporate and infringe its own patented inventions" constitutes irreparable harm because "there is a two-player system for voice tracking teleprompter solutions." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); Def Mem. 18.

---

[4] Pointing to a supplemental declaration submitted alongside the Reply Brief, Belleau retorts that its 2022 rebound in sales was actually "driven by price increases and a new monetization model." Reply 8; Supplemental Declaration of Jeremy Sadkin in Support ¶ 7 [ECF No. 56] ("Sadkin Supp. Dec."). However, "[a]rguments may not be made for the first time in a reply brief." *Knipe*, 999 F.2d at 711. Moreover, Sadkin's "unsupported assertion[s] . . . fall[] far short of establishing that irreparable harm has occurred, or will likely occur, absent a preliminary injunction." *Takeda*, 967 F.3d at 1350.

However, beyond its own self-serving declaration, *see* Sadkin Dec. ¶¶ 28–32, the only evidence Belleau offers to support its assertion of a "two-player system" are four tweets attached to the Sadkin Declaration as Exhibits G through J. *See* Sadkin Dec. Exhibit G [ECF No. 40-7]; Exhibit H [ECF No. 40-8]; Exhibit I [ECF No. 40-9]; Exhibit J [ECF No. 40-10].

It is unclear how the tweets in Exhibits G, H, and I (all authored by the same individual) support the assertion that there is a "two-player system," or that Belleau is suffering irreparable harm. As for Exhibit J, the author *recommends* both PromptSmart and Speakflow, but does not state—or even suggest—that these applications are the *only* "teleprompter apps that move the text as you speak." Exhibit J. This evidence is plainly insufficient to evidence a two-player market. *See Veeco*, 2017 WL 5054711, at *27 (E.D.N.Y. Nov. 2, 2017) (assertions of irreparable harm must be "supported by sound evidence").[5]

Indeed, Belleau's evidence indicates *the opposite* and suggests that there are other substantially similar teleprompter applications in the market. *See* Sadkin Dec. Exhibit C [ECF No. 40-3] at 3 (Individual writes "I am using BigVu and it does exactly the same."); at 5 (Individual asks "Does BigVu also have automatic voice recognition for scroll stopping whenever there is a pause or change of topic?" Another individual replies "yes."); at 10 (Individual writes "From what I know there are a few apps that can already do this for cheap.").

Belleau's other imprecise and unsubstantiated assertions of irreparable harm do not move the needle. For example, Belleau vaguely asserts it had to "postpone the development of another application," Sadkin Dec. ¶ 36, Def. Mem. 7, but neglects to provide any factual information about this other application. Similarly, Belleau asserts—without evidentiary support—that it has

---

[5] Belleau conceded as much at oral argument, acknowledging that although "a damages expert typically provides the official definition of the market in question," its "definition . . . [was] based on attorney argument." Transcript 6:19–24.

suffered reputational damage, loss of goodwill, and "is in jeopardy of losing its position as market leader and the advantage of being the pioneer in the field." Def. Mem. 20–21. These conclusory allegations fly in the face of Belleau's obligation to "articulate and adduce proof of actual or imminent harm." *See Sure Fit*, 2021 WL 2134863, at *2 (citation omitted)).[6]

For all of these reasons, Belleau has not "clear[ly] show[n]" that it will suffer irreparable harm absent injunctive relief. *Winter*, 555 U.S. at 22. Although Belleau may eventually succeed on the merits, it has not shown it is entitled to this "extraordinary remedy" midway through litigation. *Id.* The Court therefore does not address in further detail the parties' arguments as to whether Belleau has established a "sufficiently strong causal nexus" between its claimed harms and the alleged patent infringement. *Sure Fit*, 2021 WL 2134863, at *7 (citing *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020)). Similarly, this Court need not address the final two factors of the preliminary injunction analysis. *See Amazon.com*, 239 F.3d at 1350.

### III.  Letter Motions to Seal

Both parties have filed letter motions to seal information included in their briefing and evidentiary submissions. [*See* ECF Nos. 33, 45, 50.] The Court finds the sealing requests are overly broad. The parties are directed to file letters with narrowed sealing requests, and accompanying legal authority, on or before March 6, 2023. Accordingly, the letter motions to seal are provisionally granted, pending resolution of the narrowed sealing requests.

---

[6] Similarly, although Belleau asserts "it is unlikely that [it] will be able to collect on the final judgment," Def. Mem. 21, Plaintiffs have produced financial records showing $142,691.46 in gross total sales, *see* Stephenson Dec. Exhibit I [ECF No. 49-9]. Belleau's assertion therefore appears to be both "remote [and] speculative." *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 1:21-CV-00038-MKV, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (citation omitted).

## CONCLUSION

Accordingly, Belleau's application for a Preliminary Injunction [ECF No. 34] is DENIED. The parties' letter motions to seal [ECF Nos. 33, 45, 50] are provisionally GRANTED, pending the Court's receipt and resolution of narrowed sealing requests. The Clerk of Court is respectfully requested to terminate docket entries 33, 34, 45, and 50.

It is respectfully requested that the Clerk of Court initially file this Opinion with access to the parties only. The parties are directed to confer and file a letter on or before March 6, 2023 setting forth their positions, together with legal support, with respect to whether any information contained in this Opinion needs to be redacted. The parties' letters must also provide narrowed sealing requests and be accompanied by supporting authority.

**SO ORDERED.**

Date:  **March 1, 2023**
       **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**