# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CG3 MEDIA, LLC and COREY GRIFFIN, | Civil Action No. 1:21-cv-04607-MKV |
| Plaintiffs / Counter-Defendants, | |
| -v- | |
| BELLEAU TECHNOLOGIES, LLC, | |
| Defendant / Counter-Plaintiff. | |

**MEMORANDUM OF LAW IN SUPPORT OF BELLEAU TECHNOLOGIES, LLC'S
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...........................................................................1

II.  STATEMENT OF FACTS ................................................................................2

    A.  Overview of the '646 Patent ....................................................................2

    B.  Belleau's Invention and Commercialization of the Patented Products ...................3

    C.  Plaintiffs Copy Belleau's Inventions and Goes After Its Customers .....................5

    D.  Plaintiffs' Evasive and Dilatory Conduct ...................................................7

III.  PLAINTIFFS' USE AND SALE OF SPEAKFLOW SHOULD BE ENJOINED .............8

    A.  Legal Standard .....................................................................................8

    B.  Belleau is Likely to Succeed on the Merits of its Patent Infringement
        Claim .................................................................................................9

        1.  Plaintiffs Literally Infringe the '646 Patent....................................9

            a)  Speakflow Performs the Claimed Method ......................9

            b)  Plaintiffs' Non-Infringement Defense Rests on Erroneous
                Constructions ...............................................................12

            c)  Plaintiffs Infringe Under the Doctrine of Equivalents ...................13

        2.  Belleau's Patent Is Valid...............................................................14

            a)  Plaintiffs' Disclosed Prior Art does Not Anticipate the
                Claims ......................................................................15

            b)  Plaintiffs' Obviousness Position Is Inadequate .............................16

            c)  Plaintiffs' Other Invalidity Grounds Should not be
                Credited. ....................................................................17

    C.  Belleau Will Suffer Irreparable Injury Without an Injunction..............................17

        1.  Plaintiffs' Infringing Sales Cause Belleau Irreparable Harm...................18

        2.  Monetary Damages Are Not Adequate Compensation............................19

        3.  Belleau's Injuries Are Caused by Plaintiffs' Infringement ......................22

        4.  Belleau's Motion Became Ripe for Adjudication During this Case ..........22

i

D.     The Balance of Hardships Favors Belleau ................................................. 23

E.     The Public Interest Is Served by the Issuance of a Preliminary Injunction .......... 24

IV.    CONCLUSION ......................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................................. 17

*Am. Infertility of N.Y., P.C. v. Deep Blue Health N.Z. Ltd.*,
  17 Civ. 5666 (PGG) (BCM), 2020 WL 421826 (S.D.N.Y. July 23, 2020) ............................ 21

*Apple Inc. v. Samsung Elecs. Co.*,
  839 F.3d 1034 (Fed. Cir. 2016) ................................................................................ 16

*Belleau Technologies, LLC v. JoeAllenPro Limited*,
  18 Civ. 06319 (DLC), 2018 WL 4037882 (S.D.N.Y. 2018) ...................................... 21

*Boston Scientific Corp. v. Cordis Corp.*,
  C02–01474-JW, 2008 WL 171049 (N.D. Cal. Jan. 18, 2008) ................................... 14

*Canon Comput. Sys., Inc. v. Nu-Kote Int'l, Inc.*,
  134 F.3d 1085 (Fed. Cir. 1998) ................................................................................ 14

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) ................................................................................. 20

*Cognex Corp. v. Microscan Sys., Inc.*,
  No. 13-CV-2027 (JSR), 2014 U.S. Dist. LEXIS 91203 (S.D.N.Y. June 30, 2014) ............... 19

*Complex Sys. v. ABN AMRO Bank N.V.*,
  No. 08 Civ. 7497 (KBF), 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014) ............... 20

*Dayco Prods., Inc. v. Total Containment, Inc.*,
  329 F.3d 1358 (Fed. Cir. 2003) ................................................................................ 15

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) .......................................................................... 18, 19

*eBay Inc. v. MercExchange*, L.L.C.
  547 U.S. 388 (2006) .................................................................................................. 8

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
  697 F.3d 1342 (Fed. Cir. 2012) ................................................................................ 13

*Esbin & Alter, LLP v. Zappier*,
  No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487 (S.D.N.Y. Feb. 4, 2010) ................................ 21

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
  339 U.S. 605 (1950) ................................................................................................ 13

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
    No. 11 Civ. 7211 (PGG), 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. July 25, 2012) ............24

*Hybritech, Inc. v. Abbott Labs.*,
    849 F.2d 1446 (Fed. Cir. 1988) ........................................................................................24

*I4I Ltd. Partnership v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ....................................................................................19, 20

*Jacobson v. Cox Paving Co.*,
    No. 89 Civ. 1786 PHX PGR, 1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 16, 1991). .........21

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) ..........................................................................................8

*Ortho Pharm. Corp. v. Smith*,
    959 F.2d 936 (Fed. Cir. 1992) ............................................................................................9

*Par Pharm., Inc. v. TWi Pharm., Inc.*,
    773 F.3d 1186 (Fed. Cir. 2014) ........................................................................................16

*Parah, LLC and Ozonics, LLC, v. Mojack Distribs., LLC*,
    No. 18-1208-EFM-TJJ, 2018 WL 4006057 (D. Kan. Aug. 22, 2018) ..............................20, 22

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005) ......................................................................................9, 24

*Revision Military, Inc. v. Balboa Mfg. Co.*,
    700 F.3d 524 (Fed. Cir. 2012) ............................................................................................9

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ........................................................................................18

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2011) ...............................................................................................18

*Sanofi-Synthelabo v. Apotex*,
    488 F. Supp. 2d 317 (S.D.N.Y. 2006) ...............................................................................14

*Spin Master, Ltd. v. E. Mishan & Sons, Inc.*,
    19cv9035, 2019 WL 6681563 (S.D.N.Y. Dec. 6, 2019) ........................................... 15, 16, 20

*Tinnus Enter., LLC v. Telebrands Corp.*,
    846 F.3d 1190 (Fed. Cir. 2017) ........................................................................................15

*TQ Delta LLC v. Cisco Systems*,
    942 F.3d 1352 (Fed. Cir. 2019) ........................................................................................16

*Trebro Mfg, Inc. v. Firefly Equip., LLC*,
  748 F.3d 1159 (Fed. Cir. 2014) ......................................................................... 19

*Veeco Instruments Inc. v. SGL Carbon, LLC*,
  No. 17-CV-2217 (PKC), 2017 WL 5054711 (E.D.N.Y. Nov. 2, 2017) ........................ 20, 23

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*,
  339 F.3d 101 (2d Cir. 2003) ............................................................................. 18

**Statutes**

Fed. R. Civ. P. 65(a) ........................................................................................... 1

35 U.S.C. §§ 101 and 112 ................................................................................ 15, 17

35 U.S.C. §§102 and 103 ...................................................................................... 15

35 U.S.C. § 282 .................................................................................................. 14

35 U.S.C. § 283 ................................................................................................. 1, 8

35 U.S.C. §271 .................................................................................................. 1, 9

Counter-Plaintiff Belleau Technologies, LLC ("Belleau") respectfully submits this memorandum of law in support of its motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) and 35 U.S.C. §§ 271 and 283.

## I.   PRELIMINARY STATEMENT

Belleau has asserted U.S. Patent No. 9,953,646 (the "'646 Patent"), entitled "Method and System for Dynamic Speech Recognition and Tracking of Prewritten Script" against Plaintiffs and Counter-Defendants Corey Griffin ("Griffin") and CG3 Media, LLC ("CG3") (collectively "Plaintiffs").[1] Belleau is the market leader in mobile teleprompter software due to Belleau's successful implementation of its patented method of scrolling in its "PromptSmart" products, that dynamically adjusts the position of a teleprompter text display by using speech recognition.

Griffin, a software developer in California, used Belleau's patented PromptSmart product and downloaded it as early as January 2019. Plaintiffs copied Belleau's patented method into knock-off software called "Speakflow" that infringes the '646 Patent.  Belleau is a small, private company that relies on the '646 Patent as the foundation of its business suffering irreparable harm from CG3's infringement. Belleau did not seek an injunction earlier in this action because it was necessary to obtain confidential source code evidence from Plaintiffs. Further, due to a significant change in factual circumstances during the pendency of this litigation, Belleau is now in urgent need of Court intervention.

Given the strength of Belleau's infringement claim on the merits and the egregious harms caused by CG3, both public policy and the balance of hardships overwhelmingly support enjoining Plaintiffs. Accordingly, Belleau respectfully requests that the Court immediately enjoin Plaintiffs by issuing a preliminary injunction.

---

[1] As set forth in greater detail below, Griffin's company CG3 is his alter ego, with Griffin not maintaining the legally required boundaries between his personal finances and those of CG3.

## II.   STATEMENT OF FACTS

### A.   Overview of the '646 Patent

The '646 Patent is directed to a "computer-implemented method for dynamically presenting a prewritten text in a graphical user interface." Ex. 1 [2] ('646 Patent) at Abstract. Particularly, the '646 Patent addresses the problem that prior art teleprompters "scroll through the script manually as chosen by a speaker" or scroll at a constant rate. "When a teleprompter is set at a constant rate the reader may fall behind the script and get lost or may read faster than the script and have to wait for the script to catch up" or if the speaker "moves the script manually and the speaker goes off script for a period of time, the speaker may forget to progress the script when the speaker goes back on script." *Id.* at 1:24-32.

The '646 Patent addresses this problem by "dynamically presenting a prewritten text in a graphical user interface." *Id.* at 1:50-51. The '646 Patent "graphically present[s] a section of the prewritten script to a user." *Id.* at 4:8-9, where the "speaker's place may be highlighted or otherwise shown in a distinctive manner." *Id.* at 4:14-15.  Figure 5 of the '646 Patent illustrates a high-level overview of one of the disclosed embodiments.

---

[2] Numbered exhibit citations are to the concurrently filed declaration of Bryon Wasserman.



Fig. 5

In step 200, the system stores the speech (*i.e.*, the "text artifact"). Ex. 1 at 6:38-50. The system then receives vocal input from the speaker (step 202). *Id*. Next, the system processes the vocal input received through a speech to text conversion process and generates a "hypothesis" of words spoken by the speaker (*i.e.* potential words that the system believes were spoken) (step 204). Then, the system refines the hypothesis by removing words that have previously been matched (step 206).[3] *Id*. The system then compares the hypothesis words generated from the user's speech to words in the text artifact (*i.e.* the teleprompter text) (step 208). Finally, the system matches at least one of the spoken hypothesis words to the text artifact and then alters the visible text to the appropriate location (step 210). *Id*. Through this innovative system a teleprompter can automatically scroll along with a user's voice.

**B.    Belleau's Invention and Commercialization of the Patented Products**

---

[3] This feature is not recited in independent claim 1 but is recited in dependent claim 6.

In 2014 the inventors of the '646 Patent recognized the deficiencies in existing teleprompter software and worked collaboratively to create PromptSmart, the first commercial version of which was released in late 2014. *Id*. at ¶¶4,7-9. Belleau positioned PromptSmart in the market by using voice tracking as the primary differentiating feature. *Id*. at ¶¶10-13, Exs. A, B. The market was receptive to Belleau's invention and the voice tracking was the core reason customers purchased PromptSmart instead of the (often free) alternatives available in the marketplace. *Id*. at ¶¶14-20, Ex. A at 6, Ex. D.  Indeed, Belleau has always represented that PromptSmart includes patented (or patent-pending) technology, and that voice scrolling represents an advancement in teleprompter software. PromptSmart is also regarded by consumers as an innovative product with patented technology that is part-and-parcel to the brand identity. *Id*. at ¶¶14-20, Ex. A at 6, Ex. D, Ex. C (describing PromptSmart as "Gen2").

Belleau's successful commercial implementation of its patented method has caused it to rise above the competition, and as a result Belleau is currently a leading provider of teleprompter software. *Id*. at ¶¶17, 21-22.  PromptSmart is regularly ranked in the "Top 10" video apps for iPad in the Apple App Store in the United States storefront. *Id*. at ¶21. PromptSmart went "platinum" by surpassing 1,000,000 downloads across platforms. In addition, in the Apple iOS App Store, PromptSmart is more frequently rated and more highly rated than non-voice teleprompters. *Id*. at ¶¶17-18.  Customer reviews frequently describe Belleau's patented voice tracking technology as a desirable feature that makes their work easier and more efficient. *Id*. at ¶¶17-18, Exs. D, E.  Reviewers have described it as a "game changer" in the teleprompter app market from what was previously available. *Id*. at ¶18, Ex. E.  The usefulness of the patented scrolling method allowed Belleau to obtain premium pricing and a subscription monetization model that would not have been possible without patented voice tracking. Sadkin Decl. at ¶23.

Belleau's commercially successful patented product showed sustained sales growth through early 2021, with Belleau successfully selling large numbers of ongoing subscriptions. Particularly, from the end of 2019 through the beginning of the first quarter of 2021 Belleau's sales increased continually, nearly tripling. *Id.* at ¶¶24-25. However, in early 2021 Plaintiffs' infringing Speakflow product was released, resulting in a persistent drop off in sales, as Plaintiffs' infringing product began to erode Belleau's market position and siphon sales. Sadkin Decl. at ¶¶24, 25.

### C.    Plaintiffs Copy Belleau's Inventions and Goes After Its Customers

Plaintiffs, recognizing the commercial success of Belleau's voice tracking teleprompter, endeavored to copy it and make their own. Griffin downloaded and used the PromptSmart app and created a PromptSmart account as early as January 2019. *Id.* at ¶26. Griffin then developed and released a copycat "teleprompt.me" application shortly afterwards in 2019. Ex. 21 at 74:25-75:7; 77:2-8. The early versions of teleprompt.me were extremely limited both in functionality and in reach and were not sold commercially. Ex. 21 at 73:7-74:12.

In late 2020 and early 2021, Plaintiffs recognized the commercial value of utilizing Belleau's patented invention for their own profit and developed commercial-grade teleprompter software named Speakflow. Ex. 21 at 91:18-93:12. Griffin formed CG3 to nominally be the seller of his products,  but never capitalized CG3, does not abide by the requirements of its articles of incorporation, and admits that he freely transfers CG3 funds to his personal accounts. *Id.* at 41:18-42:22, 52:4-58:8; Ex. 33 at CG00000038-39 (setting conditions for distributions). As a result, CG3 has no significant assets to which a judgment could be attached. Ex. 21 at 52:4-58:8; Ex. 3 at CG3001454. Plaintiffs further copied PromptSmart by integrating the key, speech-control feature into the product name and emphasizing to customers the voice tracking features of their infringing product. Ex 20. Plaintiffs announced Speakflow in late 2020 and continued to

develop its web page and marketing during the first quarter of 2021. Ex. 21 at 91:18-93:12.

Plaintiffs emphasized the benefits of using Belleau's patented method to match the speed of the teleprompter to the user's speaking pace.  Ex. 20 at 2. As a result of Speakflow's placement, the market for teleprompter apps that advance the text using speech recognition has effectively become a two-player market: PromptSmart and Speakflow.  Sadkin Decl. at ¶28-30, G, H, I, J. Both Belleau and Plaintiffs sell teleprompter solutions to the same customers over the internet from their respective websites promptsmart.com and speakflow.com. *Id.* at ¶33.

PromptSmart and Speakflow are also positioned together publicly by customers when discussing teleprompter solutions. *Id.* at ¶¶ at ¶28-30, Exs. G, H, I, J.  As a result, Speakflow gradually began to steal customer share from Belleau. Sadkin Decl. at ¶¶24-25. Reviewers and customers  that previously mentioned Belleau as the sole provider of voice tracking teleprompters, began mentioning both Speakflow and PromptSmart. *Id.* at ¶28-30, Exs. G, H, I, J. Belleau's customers switched to Speakflow. *Id.* at ¶¶31, 32.  Speakflow, which uses search engine optimization to direct web traffic to speakflow.com has necessarily caused Belleau's PromptSmart brand to be less visible and also causes lost sales and lost access to customers who did not sign up for trials. *Id.* at ¶¶32-34, Ex. 21 at 120:17-21.

Belleau's sales which had been rising over the previous two years, flattened off and began to decline. Sadkin Decl. at ¶¶24, 25. During the first quarter of 2021 PromptSmart generated approximately ███████ in revenue, up more than triple the revenues from three years earlier. *Id.*  Immediately afterwards, as Plaintiffs began to market Speakflow in early to mid-2021, Belleau's revenues declined precipitously. In the second quarter of 2022, Belleau's PromptSmart revenues declined to approximately ██████. *Id.* Plaintiffs' infringement has caused Belleau to lose sales in accelerating fashion, worsening with time.  Because both parties

sell subscriptions, each lost customer to Plaintiffs results in ongoing lost revenues for Belleau. *Id.* at ¶23, Ex. 21 at 241:3-242:8.

During the pendency of this litigation, Belleau's reduction in revenue caused by Plaintiffs' infringement has hindered Belleau's economic growth and also Belleau's maturation as a company. Belleau has suspended profit distributions to members until further notice and has also had to make substantial adjustments to its research and development budget. Sadkin Decl. at ¶¶34-35. Because of Plaintiffs' conduct, Belleau has had to postpone the development of another app (unrelated to the teleprompter market) which would have helped to diversify Belleau's assets holdings and expands Belleau's reach into new markets. *Id.* at ¶36.

### D.    Plaintiffs' Evasive and Dilatory Conduct

In April 2021, as soon as Belleau became aware that Plaintiffs were selling a commercial product, Belleau's manager Jeremy Sadkin attempted to contact Griffin. Griffin twice ignored Mr. Sadkin, leaving Belleau no choice but to send Plaintiffs a cease-and-desist letter explaining Plaintiffs' infringement, and a copy of the '646 Patent. *Id.* at ¶¶37-39, Exs. L and M.

When Belleau did not receive a response, it followed up with Plaintiffs on May 14, 2021. Sadkin Decl. at ¶41, Ex. N. Plaintiffs represented that they needed additional time to consider, but Plaintiffs shortly afterwards raced to the courthouse to file a complaint for a declaratory judgment on non-infringement and invalidity. *Id.*, Dkt. 1. Plaintiffs' counsel notified Belleau by emailing Sadkin a copy of the complaint and a two-page letter that presented a frivolous non-infringement position, which is discussed in greater detail below. Sadkin Decl. at ¶43, Ex. O.

Despite the fact that Plaintiffs filed this suit, they have repeatedly withheld crucial information and have avoided joining critical issues that might have allowed for earlier resolution of this dispute. For example, Plaintiffs ignored repeated requests for inspection of the source code, despite its core relevance to the case and the fact that large portions were available

to the public. Dkt. 19 at 1-2. After two incomplete productions, repeated incorrect representations that its productions were complete, Plaintiff only produced its full source code after being expressly ordered by the Court. Dkt. 25.

Plaintiffs have also vexatiously asserted and maintained frivolous positions, needlessly driving up Belleau's fees. During claim construction, the parties identified disputed claim terms for construction. Dkt. 22. Belleau took Plaintiffs' contentions in good faith and expended significant time and cost to brief all of those terms. Dkt. 26. However, when the time came to actually file its brief, Plaintiffs chose not to offer any arguments for four of the seven terms it disputed, even omitting argument for *three terms they had originally proposed*. Dkt 28 at 9-10, Dkt. 28-2. Plaintiffs' ongoing evasive tactics have further necessitated that Belleau seek accelerated resolution of this matter.

## III.   PLAINTIFFS' USE AND SALE OF SPEAKFLOW SHOULD BE ENJOINED

### A.   Legal Standard

Under the Patent Act, a Court may order an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Accordingly, the proper purpose of an injunction is to prevent infringement from occurring. "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts..." *See eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 394 (2006).

Whether a preliminary injunction should issue turns on four factors: "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) (citation omitted). District courts are given broad discretion under 35 U.S.C. § 283 in "determining whether the facts of a case warrant an

injunction and in determining the scope of the injunctive relief." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992).

**B.      Belleau is Likely to Succeed on the Merits of its Patent Infringement Claim**

This factor weighs in favor of injunction because Plaintiffs infringe and cannot invalidate the '646 Patent. *See Pfizer, Inc. v. Teva Pharms., USA, Inc.,* 429 F.3d 1364, 1372 (Fed. Cir. 2005) (upholding injunction based on strength of merits). The controlling standard for likelihood of success on the merits is governed by Federal Circuit precedent and is a lesser burden than the heightened standard set by the Second Circuit in other contexts, requiring only a showing that success is more likely than not. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012) (vacating district court's imposition of the wrong standard in a patent case).

**1.      Plaintiffs Literally Infringe the '646 Patent**

The Speakflow product literally infringes Plaintiffs' '646 Patent, or in the alternative, infringes the '646 Patent under the doctrine of equivalents. Speakflow is hosted on a web server controlled and maintained by Plaintiffs. Frankovitz Decl. at ¶68; Ex. 21 at 24:5-21; 27-3:18. Speakflow performs the claimed method when in use. Thus, Plaintiffs directly infringe the claimed method under 35 U.S.C. §271(a).  Similarly, Plaintiffs induce their users under 35 U.S.C. §271(b) by intentionally causing them to perform the claimed method, and thus infringe on this basis as well.

**a)      Speakflow Performs the Claimed Method**

As summarized below and set forth in greater detail in the Declaration of Jason Frankovitz. Plaintiffs' Speakflow app infringes each of claims 1, 2, 4, 6, 9, 10, and 11. The chart below outlines each limitation of the asserted claims of the '646 Patent (Frankovitz Dec. at Appendix B), and the infringing Speakflow app's corresponding infringing function. Mr. Frankovitz's declaration additionally includes alternative bases on which each limitation is met.

| **'646 Patent** | **The Infringing Speakflow App** |
|---|---|
| **Claim 1**<br>1. A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising: | Plaintiffs have never argued that the preamble is limiting and in any event it is met by Speakflow. Frankovitz Decl. at Appendix B, preamble. |
| a) receiving a text artifact, said text artifact containing a plurality of artifact words; | Speakflow receives text artifacts that contain words (called "scripts") directly from users. Frankovitz Decl. at Appendix B, element 1(a). |
| b) storing, via a processor, said text artifact in a memory device of a computer; | Speakflow stores the text artifacts (scripts) using computer memory and on a Speakflow server. Frankovitz Decl. at Appendix B, element 1(b). |
| c) retrieving, via said processor, said text artifact;<br><br>d) displaying said text artifact on the display screen of said computer; | When a user seeks to read a teleprompter script, Speakflow retrieves and displays the user's script in a browser window visible from the device's display screen. Frankovitz Decl. at Appendix B, elements 1(c) and 1(d). |
| e) receiving a vocal input; | The Speakflow application receives vocal input through a device's microphone. Frankovitz Decl. at Appendix B, element 1(e). |
| f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words; | Upon receiving the audio from a microphone Speakflow sends the audio to an IBM speech-to-text service or uses a speech to text function in the web browser. These functions generate a text file with the spoken words in text format. These spoken words are "hypothesis words." Frankovitz Decl. at Appendix B, element 1(f). |
| g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words; | Speakflow compares one or more words in the generated text file (hypothesis words) with one or more words in the user's script (artifact words). Frankovitz Decl. at Appendix B, element 1(g). |
| h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words; | Speakflow determines a location in the script (artifact words) where the text of the script matches the words spoken by the user (hypothesis words). Frankovitz Decl. at Appendix B, element 1(h). |

10

| '646 Patent | The Infringing Speakflow App |
|---|---|
| i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer; | Upon matching the one or more spoken (hypothesis) words to one or more script (artifact) words Speakflow moves the scrolled text to the location of the matched words. Frankovitz Decl. at Appendix B, element 1(i). |
| j) determining, via said processor, the font size of the text of said text artifact as displayed on said display screen; | The Speakflow app enables the user to increase or decrease the font size of the displayed text and thus knows the size of the text. Frankovitz Decl. at Appendix B, element 1(j). |
| k) determining, via said processor, the orientation of the electronic screen displaying the text of the text artifact; | Speakflow contains a user interface that displays text on a screen and formats the text for the screen and accordingly maintains information about dimensions and orientation. Additionally, when the orientation is rotated (such as with an iPad) the positioning on the text is adjusted. Additionally, Speakflow includes a discrete function to control the alignment of the text, which necessitates knowing orientation. Frankovitz Decl. at Appendix B, element 1(k). |
| l) altering, via said processor, said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words. | Speakflow can adjust the number words of the script used for comparison to spoken words. Frankovitz Decl. at Appendix B, element 1(l). |
| **Claim 2**<br><br>The method as in claim 1 further comprising highlighting on said display of said computer screen one or more artifact words within said match location of said text artifact. | The Speakflow app identifies spoken words and highlights them on the display by graying them out. Frankovitz Decl. at Appendix B, claim 2. |
| **Claim 4**<br><br>The method as in claim 2 wherein the method of highlighting comprises altering the color of the font of one or more artifact words on said display screen. | As discussed for claim 2, the Speakflow app identifies spoken words and highlights them on the display by graying them out. Frankovitz Decl. at Appendix B, claim 4. |
| **Claim 6**<br><br>The method as in claim 1 further comprising: | Speakflow eliminates words from consideration after they have been matched. Frankovitz Decl. at Appendix B, claim 6. |

| **'646 Patent** | **The Infringing Speakflow App** |
|---|---|
| a) determining whether one or more words of said plurality of hypothesis words have been matched to a match location of said text artifact; b) removing one or more words from said plurality of hypothesis words, wherein said removed words have been previously matched to a match location of said text artifact. | |
| **Claim 9**<br><br>The method as in claim 1 further comprising establishing a scroll rate for said text artifact on said display screen of said computer. | The Speakflow application includes functions for setting scroll speeds. Frankovitz Decl. at Appendix B, claim 9. |
| **Claim 10**<br><br>The method as in claim 9 further comprising increasing said scroll rate when a speaker's location in said text artifact is positioned at a bottom portion of the display screen. | In Speakflow app, the scroll rate accelerates to move to a match when a user speaks a matched word that is in a lower portion of the screen. Frankovitz Decl. at Appendix B, claim 10. |
| **Claim 11**<br><br>The method as in claim 9 further comprising decreasing said scroll rate when a speaker's location in said text artifact is positions at a top portion of the display screen. | After moving quickly as described in claim 9, the Speakflow application will scroll more slowly if later matches are at the top of the screen. Frankovitz Decl. at Appendix B, claim 11 |

As set forth above, Speakflow performs each and every step recited in claims 1, 2, 4, 6, 9, 10, and 11 of the '646 Patent; and therefore, Plaintiffs literally and directly infringe the '646 Patent.

**b)   Plaintiffs' Non-Infringement Defense Rests on Erroneous Constructions**

Plaintiffs' only articulated non-infringement defense is premised on two clearly erroneous constructions. Plaintiffs have not factually disputed that the claimed steps are all performed by Speakflow. Thus, Plaintiffs seek to side-step Belleau's patent by inserting nonexistent hardware limitations into the claims. Particularly in their only stated non-

infringement defense, Plaintiffs have argued that because step 1(b) (storing a text artifact) and step 1(f) (generating a text file) are allegedly performed by different microprocessors, that the claims are not infringed. Ex. 5.

In support of their non-infringement position, Plaintiffs alleged during claim construction that the "processor" limitation recited in the claims must be a single microprocessor and may not include multiple components working together. Dkt. 27 at 4. Second Plaintiffs alleged that each recited "processor" must refer to *the same microprocessor*. Dkt. 28 at 5-7.  As set forth in greater detail in Belleau's claim construction brief (Dkt 26), these positions are not supported by the claims, specification, or precedent. Dkt. 26 at 7-13. Indeed, the '646 Patent expressly describes a "processor" as including multiple discrete devices working together.[4] *Id.* at 8; Ex. 1 at 14:65-15:16. This alone eviscerates Plaintiffs' erroneous "single processor" non-infringement defense. Frankovitz Decl. at ¶¶76-78.

### c)  Plaintiffs Infringe Under the Doctrine of Equivalents

Even assuming *arguendo* Plaintiffs evade literal infringement, Speakflow would still infringe under the doctrine of equivalents. Under Federal Circuit precedent, a patentee can show infringement under the doctrine of equivalents by showing that the accused product performs substantially similar functions in a similar way to achieve a similar result. *See Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1352 (Fed. Cir. 2012). This doctrine has been recognized by the Supreme Court as necessary to prevent an "unscrupulous copyist" from making "unimportant and insubstantial changes…to take the copied matter outside the claim." *Graver Tank & Mfg. Co. v. Linde Air Products Co*., 339 U.S. 605, 607 (1950).

---

[4] Even if "processor" was construed to mean a single microprocessor, the claims still do not require that the *same* processor perform each and every step – and thus Speakflow would still infringe under this erroneous construction. Dkt. 28 at 9-13.

Plaintiffs' non-infringement position hinges on a meaningless and insubstantial difference regarding how many processors are involved in the claimed method and which processor performs certain steps – differences which would be irrelevant to a person of average skill in the art and are expressly deemed unimportant in the '646 Patent. Frankovitz Decl. at ¶¶82-83. Whether a text file is generated by one or many processors, for example, is an insubstantial difference if the content of the text file is used to achieve the same result. *Id.* Both "processors" would perform the same function (creation of a text file containing hypothesis words for comparing a script) in the same way (using voice recognition algorithms that convert audio to text data) to achieve same result (a text file is created representing spoken words). *Id.* Similarly, any other steps performed by different microprocessors are insubstantially different. *Id.* at ¶82. *See also Boston Scientific Corp. v. Cordis Corp.*, C02–01474-JW, 2008 WL 171049, at *9 (N.D. Cal. Jan. 18, 2008) ("While the DCS creates this force hydraulically using fluid inside its delivery tube, **the combination of more than one element or step to perform a single function** does not avoid infringement under the doctrine of equivalents.") (emphasis added). Accordingly, even if both of Plaintiffs' claim construction positions were adopted, Speakflow would still infringe the '646 Patent under the doctrine of equivalents.

## 2.      Belleau's Patent Is Valid

Belleau's patent is presumptively valid. 35 U.S.C. § 282; *see Canon Comput. Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("[A] patent is presumed valid, and this presumption exists at every stage of the litigation."). At the preliminary injunction stage, "the trial court does not resolve the validity question but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Sanofi-Synthelabo v. Apotex*, 488 F. Supp. 2d 317, 327 (S.D.N.Y. 2006) (citation omitted). A patent challenger must be able to raise a "substantial question"

14

concerning validity or non-infringement. *Tinnus Enter., LLC v. Telebrands Corp.,* 846 F.3d 1190, 1202 (Fed. Cir. 2017) (affirming district court's issuance of a preliminary injunction). "Where the alleged infringer attacks the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, which the patentee must then rebut." *Id.* at 1205 (internal citation and quotation marks omitted).

Plaintiffs have failed to come forward with sufficient evidence to raise a substantial question. The only disclosure of Plaintiffs' invalidity position in this case was their November 22, 2021 invalidity contentions, in which they: (a) alleged without further explanation that certain prior art invalidated the claims under 35 U.S.C. §§102 and 103; and (b) alleged invalidity under 35 U.S.C. §§101 and 112 in a conclusory manner.

### a)      Plaintiffs' Disclosed Prior Art does Not Anticipate the Claims

The prior art identified by Plaintiffs does not anticipate the claims. Plaintiffs identified fourteen references in their invalidity contentions. As set forth in the invalidity analysis of Mr. Frankovitz, none of these references disclose independent claim 1's combination of tracking teleprompter features and its features for controlling the display and words used for speech recognition consideration, let alone the additional features recited in the dependent claims. Frankovitz Decl. at ¶¶88-104. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) ("[T]he dispositive question regarding anticipation . . . [is whether] every claim element was disclosed in that single reference."). Moreover, the scope and the teachings of the prior art references disclosed by Plaintiffs are less probative than the prior art already considered by the USPTO during prosecution. *Id.* at ¶89. Accordingly, the prior art fails to raise a substantial question of invalidity at the preliminary injunction phase. *See Spin Master, Ltd. v. E. Mishan & Sons, Inc.,* 19cv9035 (DLC), 2019 WL 6681563, at *15, 16 (S.D.N.Y. Dec. 6, 2019) (granting preliminary injunction and rejecting anticipation evidence).

15

### b)      Plaintiffs' Obviousness Position Is Inadequate

Plaintiffs have put forward no specific combinations of prior art and there is no reason to think that Plaintiffs can carry their burden of proof regarding obviousness. *See Par Pharm., Inc. v. TWi Pharm., Inc.,* 773 F.3d 1186, 1194 (Fed. Cir. 2014) (rejecting obviousness arguments for failure to show all elements) . Plaintiffs cannot identify any combination of references with all the claim limitations, nor can they offer any persuasive showing that a person of ordinary skill would combine the references in the manner claimed. *See TQ Delta LLC v. Cisco Systems*, 942 F.3d 1352, 1357 (Fed. Cir. 2019) (reversing PTAB decision on obviousness because mere conclusory assertion of motivation to combine is insufficient); *Spin Master,* 2019 WL 6681563, at *16. (granting preliminary injunction and rejecting obviousness allegations).

Even if Plaintiffs could offer a persuasive motivation to combine, it would be rebutted by Belleau's evidence of the four objective indicia of non-obviousness (industry praise for the invention, copying by others, commercial success, and long-felt need). *Compare* [evidence] *with Spin Master,* 2019 WL 6681563, at *15-17. These four objective indicia "may often be the most probative and cogent evidence in the record . . . [to establish] that an invention appearing to have been obvious in light of the prior art was not." *Apple Inc. v. Samsung Elecs. Co.,* 839 F.3d 1034, 1052 (Fed. Cir. 2016).

First, as to commercial success, PromptSmart has risen above the competitive field based specifically based on its claimed scrolling method. Sadkin Decl. at ¶¶14-20. Second, as to copying, Griffin–originally a PromptSmart user–decided to copy PromptSmart for his own purposes and himself emphasized the benefits of the claimed voice tracking.  *See* Section II.C, *supra.* Third, as to industry praise, PromptSmart has been repeatedly praised in unsolicited reviews in writing and on YouTube which point to the usefulness and desirability of the patented voice tracking feature. *Id.* And fourth, as to long-felt need, PromptSmart represents an

16

advancement in teleprompter app technology, given that numerous reviewers mention the voice tracking as a "game changer" from what was previously available and significantly improved previous efficiency issues. *Id.* at ¶18. For each of these indica there is a "nexus" between the patented features (voice tracking) and the indicia of non-obviousness.

> ### c)   Plaintiffs' Other Invalidity Grounds Should not be Credited.

Plaintiffs' disclosures and Complaint vaguely hint at invalidity grounds under 35 U.S.C. §§ 101 and 112 but offer no explanation. As set forth in Mr. Frankovitz's declaration, the claims would be understood by a person of ordinary skill. Frankovitz Decl. at ¶109. Moreover, Plaintiffs have waived their indefiniteness challenge under 35 U.S.C. § 112 by abandoning it in their claim construction brief. Dkt. 27 at 9-10.

Similarly, the claims are not directed to unpatentable subject matter under 35 U.S.C. § 101. To establish the claims are directed to ineligible subject matter, a patent challenger must establish that "the claims at issue are directed to [a] patent-ineligible concept[]." *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 217 (2014). If the claims are not directed to an abstract concept the analysis stops. *Id.*  Here, the claims are not directed to an abstract concept.  A voice controlled teleprompter is a tangible invention that can be easily perceived, not an abstract process like a financial transaction. Frankovitz Decl. at ¶108. Further, even if such a concept were incorrectly determined to be abstract, the '646 Patent's novel use of voice control and specific text analysis features would transform the claims into a patent eligible application. *Id.*

Plaintiffs cannot raise a substantial question of validity of the '646 Patent. Because Belleau is highly likely to succeed on the merits of its patent infringement claim, this factor strongly favors granting an injunction.

> ## C.   Belleau Will Suffer Irreparable Injury Without an Injunction

Irreparable harm is a "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). "Harm might be . . . irreparable[] for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2011).

### 1.    Plaintiffs' Infringing Sales Cause Belleau Irreparable Harm

Both PromptSmart and Speakflow are competing for the same customers in the same web-based, e-commerce channel by selling subscriptions directly from their respective websites. Sadkin Decl. at ¶¶12, 33. They are both recognized as distinct competitors and the pre-eminent parties selling voice tracking teleprompters. *Id.* at ¶¶28-30. Accordingly, there is a two-player system for voice tracking teleprompter solutions. In a two-player market, lost sales for the patent holder substantiate irreparable harm. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."); *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) ("the existence of a two-player market may well serve as a substantial ground for granting an injunction").

Even if the parties were not in a two-player market, Belleau has substantial direct evidence of irreparable harm. As set forth above, Belleau has lost sales because of Plaintiffs' infringing activity. *See* Section I.A, *supra*. This is evidenced by (a) instances of customers switching to Speakflow from PromptSmart; (b) market participants that previously recognized PromptSmart as the sole voice tracking teleprompter solution now identifying Speakflow; and (c) Belleau's declining revenues, which coincided almost directly with the time that Speakflow has been on the market. Sadkin Decl. at ¶¶24-25.  Belleau has lost significant portions of the market,

as evidenced by downward trends in revenue in 2021 and 2022, after the infringement began. This fact alone weighs heavily finding irreparable harm. *See Trebro Mfg, Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) ("The district court's blanket dismissal of evidence showing likely loss of market share and loss of access to customers was an error of law.").

Enjoining a direct competitor from adopting an infringing software system in a competing product is necessary to prevent irreparable harm to Belleau. *See Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 (JSR), 2014 U.S. Dist. LEXIS 91203, *3-4 (S.D.N.Y. June 30, 2014) ("[P]laintiffs face irreparable harm if infringing versions of the Mobile Hawk product are permitted to compete with Cognex products that utilize the inventions claimed in the '487 patent . . . because Cognex and Microscan are competitors in this market[.]").  *See also Douglas Dynamics*, 717 F.3d 1344-45 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

### 2.    Monetary Damages Are Not Adequate Compensation

Belleau is a small company in an emerging market and legal remedies like money damages are not adequate in cases where "a small company was practicing its patent, only to suffer a loss of market share, brand recognition, and customer goodwill as the result of the defendant's infringing acts" because these losses "defy attempts at valuation, particularly when the infringing acts significantly change the relevant market." *I4I Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).

Due to both parties' subscription model, Belleau may have permanently lost access to Plaintiffs' customers, an irreparable harm that cannot be adequately compensated by money damages. In Speakflow and PromptSmart's subscription model, customers subscribe and are continuously billed unless they choose to cancel the service. Thus, a customer that subscribes to

19

Plaintiffs' service may not seek out new teleprompter services and may be lost to Belleau forever. *See id.*; *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("There is no effective way to measure the loss of sales or potential growth—to ascertain the people who do not knock on the door or to identify the specific persons who do not reorder because of the existence of the infringer.") (quoting district court hearing transcript).

Belleau's continued decline in revenue that has occurred and accelerated during the pendency of this litigation has caused it to reduce its research and development budget, including the shelving new projects that would diversify Belleau's assets and expand Belleau's reach beyond teleprompter app marketplace. Sadkin Decl. at ¶¶34-36. When a company's lost revenue impairs its ability to invest in research and development, this also supports a finding of irreparable harm. *See Spin Master,* 2019 WL 6681563, at *17 ("[I]nfringing activity . . . [has] and will challenge Spin Master's ability to spend on further innovation and development of the Zero Gravity pipeline."); *See also Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 5054711, at *27 (E.D.N.Y. Nov. 2, 2017)(considering inability to invest in research).

Further, Belleau's PromptSmart brand recognition and goodwill is compromised because of Plaintiffs' infringement. Belleau has always positioned PromptSmart in the market as the only teleprompter app with patented voice tracking, and the damage to Belleau's reputation and the loss of goodwill caused by the existence of an infringing competitor cannot be quantified, constituting irreparable harm. *See Parah, LLC and Ozonics, LLC, v. Mojack Distribs., LLC,* No. 18-1208-EFM-TJJ, 2018 WL 4006057, at *10 (D. Kan. Aug. 22, 2018) (granting preliminary injunction when, *inter alia*, "evidence shows that [the patentee] advertises its products as containing patented technology and that it strictly enforces its patent rights."); *Complex Sys. v.*

*ABN AMRO Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 U.S. Dist. LEXIS 64467, *38, 43

(S.D.N.Y. May 9, 2014) (holding that loss of goodwill or reputation may constitute irreparable

harm). Belleau both advertises its products as containing patented technology and strictly

enforces its patent rights.  *See e.g. Belleau Technologies, LLC v. JoeAllenPro Limited*, 18 Civ.

06319 (DLC), 2018 WL 4037882, *1 (S.D.N.Y. 2018); Sadkin Decl. at ¶¶11, 12.

　　　　Furthermore, Belleau is in jeopardy of losing its position as market leader and the

advantage of being the pioneer in the field, both of which constitute irreparable harm. *See Esbin*

*& Alter, LLP v. Zappier*, No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487, at *6-7 (S.D.N.Y. Feb.

4, 2010) (granting preliminary injunction motion because plaintiff's "competitive position has

been threatened by the ways in which the [defendant's] program has allowed [defendant] to

exploit the program's functionality and [plaintiff's] proprietary expertise as embodied in the

software). If Plaintiffs are not enjoined from infringing the '646 Patent, other potential

competitors will be encouraged to distribute "knock-off" apps and will flood the market with

inferior products. *See Jacobson v. Cox Paving Co.*, No. 89 Civ. 1786 PHX PGR, 1991 U.S. Dist.

LEXIS 17787, at *45, 49 (D. Ariz. May 16, 1991).

　　　　Finally, even if Belleau is able to accurately quantify its damages claims and obtains a

full judgment at trial, it is unlikely that Belleau will be able to collect on the final judgment.

Griffin has funneled money out of CG3 Media LLC without consideration of its corporate form,

effectively intermingling its funds with his own. Ex. 21 at 41:18-42:22, 52:4-58:8. Griffin's

disclosed accounts do not have sufficient money to compensate Belleau for Plaintiffs'

infringement. Ex. 3 at CG3001454, CG3001456.  *See Am. Infertility of N.Y., P.C. v. Deep Blue*

*Health N.Z. Ltd.,* 17 Civ. 5666 (PGG) (BCM), 2020 WL 421826, at *6 (S.D.N.Y. July 23, 2020)

(adopting recommendations re: permanent injunction that were based on irreparable injury due to defendants' financial condition).

Because Belleau faces the prospect of losses that are difficult to measure and to replace, money damages are not an inadequate remedy. Without an injunction preventing the distribution and sale of Plaintiffs' Speakflow application, Belleau will suffer imminent, irreparable injury.

### 3. Belleau's Injuries Are Caused by Plaintiffs' Infringement

As set forth above, the overwhelming evidence both from Belleau and Plaintiffs is that Speakflow's infringing voice scrolling method drives its sales. The importance of the infringing voice tracking features is evidenced by: (a) Speakflow and Belleau customer reviews and feedback, which demonstrate that customers overwhelmingly value the voice tracking features of these products; (b) Plaintiffs and Belleau's own advertising, which emphasizes the importance and benefits of voice tracking; and (c) industry reviews, which emphasize the patented voice tracking features; *See* Sadkin Decl. at ¶¶13-21. All of these point to voice tracking as *the* feature that drives Speakflow sales. Indeed, the name "Speakflow" is clearly a reference to the ability to control the flow of the teleprompter according to a user's speech. In cases such as this where the patented feature "creates the demand for the products," the causal nexus requirement connecting a decline in revenue to infringement is "easily met." *Parah,* 2018 WL 4006057, at *22 (citing *Apple Inc. v. Samsung Elecs. Co.,* 735 F.3d 1352 (Fed. Cir. 2013)).

### 4. Belleau's Motion Became Ripe for Adjudication During this Case

Belleau did not move prematurely for a preliminary injunction when this action began. Instead, Belleau waited to obtain a verified production of the Speakflow source code and testimony from Plaintiffs. Despite Plaintiffs' best efforts to delay and obstruct, Belleau can now put a clear record before the Court on this motion.

Given the low likelihood of an amicable out-of-court resolution in which CG3 stops its infringement,[5] and the compounding economic harm caused by Plaintiffs' infringement, Belleau must move now and urgently seek the Court's assistance in ending Plaintiffs' infringement. Any delay in filing is justified under the circumstances because Belleau has sustained irreparable injuries during the pendency of the litigation. *Veeco*, 2017 WL 5054711, at *31 ("The Court declines to punish Veeco for electing not to file a premature motion for a preliminary injunction, and instead filing the motion only after sustaining and marshaling evidence of irreparable harm.").

At the time the suit began Belleau did not yet have evidentiary record necessary to fully prove infringement in the form of verified source code and testimony from Plaintiffs.  Further, at the time that the suit began Belleau believed that it could proceed without immediate injunctive relief but Plaintiffs' attempts to delay and extend the case, and the accelerating and increasing economic harm caused by Plaintiffs' infringement, make it necessary for Belleau to move now to stop Plaintiffs' infringement.

### D.     The Balance of Hardships Favors Belleau

The balance of hardship favors Belleau, which has invested extensive time, labor, skills, and expenditures in developing its product and has diligently worked to protect its business, reputation, and patent. Belleau's continued financial existence depends on it being able to exclude infringing competitors. Griffin and CG3 existed for years before they began infringing and could no doubt continue with their ventures outside the teleprompter market. Ex. 21 at 41:18-42:22.

---

[5] The animus from Griffin is such that he referred to Belleau's product as a "bitch ass" in a comment in his source code. Ex. 21 at 239:6-25.

Additionally, it is well-settled that "[a]n alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct." *Pfizer,* 429 F.3d at 1382; *accord Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211 (PGG), 2012 U.S. Dist. LEXIS 103864, *56 (S.D.N.Y. July 25, 2012) (when a direct competitor knowingly copies a patented design it assumed the risk of financial loss). Thus, balancing the parties' respective potential hardships favors Belleau.

### E.    The Public Interest Is Served by the Issuance of a Preliminary Injunction

Even if the public policy interests supporting each side were even, a finding that "neither party has a clear advantage" would be sufficient to sustain an injunction. *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457-58 (Fed. Cir. 1988). In this case, consideration of the public interest weighs clearly in favor of Belleau. No legitimate public interest is served by Plaintiffs' sale of patent-infringing products and there is a compelling, intrinsic public interest in protecting rights secured by valid patents. *See Pfizer*, 429 F.3d at 1382 ("a preliminary injunction that enforces a valid patent against an infringer does no more than further public policy interest in the patent laws designed to encourage useful inventions by rewarding the inventor with a limited period of market exclusivity") (citation and quotation omitted).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Belleau respectfully requests that the Court issue a preliminary injunction: **(a)** Enjoining Plaintiffs Corey Griffin and CG3 Media, LLC, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active concert or participation with them, from any conduct that infringes, directly or indirectly, the '646 Patent, including making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using their Speakflow software product – or any other software

application infringing the '646 Patent – within the United States; **(b)** Enjoining Plaintiffs from taking any public or private position that is contrary to the Court's order; **(c)** Requiring Plaintiffs to take down speakflow.com and to remove all marketing materials, postings, and social media accounts about Speakflow; and **(d)** Granting Belleau such other and further relief as this Court deems just and proper.

Dated: November 14, 2022
New York, New York

Respectfully submitted,

By: */s/ Etai Lahav*
Etai Lahav
Bryon Wasserman (*pro hac vice*)
**RADULESCU LLP**
5 Penn Plaza, 19th Floor
New York, NY 10001
646-502-5950
etai@radip.com
bryon@radip.com

***Attorneys for Defendant/Counter-Plaintiff***
***Belleau Technologies LLC***

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Etai Lahav*
Etai Lahav